---

# SUPREME COURT.

## DANIEL RAMSON agt. THE MAYOR, &C., OF NEW-YORK.

The amended charter of the city of New-York, of 1849, (§ 18,) organizes an executive department to be known as the "law department," "which shall have charge of and conduct all the law business of the corporation, and of the departments thereof, and all other law business in which the city shall be interested, when so ordered by the corporation."

The intent of the charter was, to place all legal business in the control and under the management of the *corporation counsel*, in the result of which the corporation might have *any interest*, and for the expense of which it might, by any possibility, be called on for payment.

Thus the corporation counsel has confided to him, and it is made his duty to conduct, as well all the law business of the legislative department, or either branch of it, as to conduct the law business of the several executive departments, and their several bureaus and subdivisions.

It is not competent, therefore, for the executive or legislative department, or any

of its committees or agents, to pass by the law officer selected by the people, and charged by the charter with these duties, and select and appoint other counsel to perform them. Where there is such appointment made, the counsel has no right of action, or redress for his professional services against the common council.

*It seems*, also, that the act of employment of counsel by a committee of the legislative department, is an *executive* act which they are incompetent to perform.

*Trial by the court, New - York Circuit, April, 1857.*

IN 1855, the board of aldermen of this city resolved to institute an investigation into the affairs of the police department, and appointed a committee to conduct the investigation. During its progress, several witnesses declined answering questions put to them by the committee, and the committee instituted legal proceedings to compel them to answer. The counsel to the corporation was not employed or applied to, to conduct the proceedings; but the special committee employed such counsel as were agreeable to them for that purpose; among others, the assignor of the plaintiff.

There was no inability on the part of the counsel to the corporation to act in the premises; and he testifies that he should have acted if he had been applied to for that purpose.

The bill of the plaintiff's assignor, for professional services rendered to the committee, amounts to $681, and to recover which this suit is brought.

A. NASH *and* WM. CURTIS NOYES, *for plaintiff.*
M. V. B. WILCOXSON, *for defendants.*

DAVIES, Justice. No question is made in this cause as to the rendition of the services of the plaintiff's assignor, or the reasonableness of the charges therefor. The simple question presented is, can the corporation be made liable for this claim?

Section 18 of the charter of 1849, organizes an executive department, to be known as the "law department," "which shall have charge of and conduct all the law business of the corporation and of the departments thereof, and all other law

business in which the city shall be interested, when so ordered by the corporation."

By the city charter, therefore, the counsel to the corporation is "to have charge of, and conduct," not only all the law business of the corporation, but all the law business of the several departments of the corporation. These provisions apply to all cases in which the corporation, or any of its departments, have any law business to be transacted. In addition to this, the counsel is to have charge of and conduct "all other law business in which the city shall be interested, when so ordered by the corporation." The application of this latter provision, and the reason for its enactment, are familiar to all who have had any practical knowledge of the affairs of the city government. Many suits, proceedings and causes, are constantly instituted, in which neither the corporation nor any of its departments are parties. But the questions to be decided may be such as to affect the property or rights of the corporation, or some of its officers. Previous to the charter of 1849, such suits were defended or prosecuted by counsel employed by the immediate parties to the action, and frequent calls were made upon the city treasury for their payment, on the ground that the corporation was interested in the suit or in its result. The intent of the charter of 1849, was to place all legal business, in the control and under the management of the corporation counsel, in the result of which the corporation might have any interest, and for the expense of which it might, by any possibility, be called on for payment. It was in reference to this class of cases, that the counsel to the corporation was to take charge of and conduct, whenever required so to do by the corporation, all law business in which it had any interest. It is quite manifest, that it was the intention of the framers of the charter and the ordinances, that all the law business of the corporation, or of its departments, or in which the corporation should deem it had any interest, should be conducted by, and should be placed in the charge of the counsel to the corporation. For these services, a specific salary is given to that

officer, such as was deemed an adequate and reasonable compensation therefor. These services he is bound to render, and must do it for the compensation allowed. It is in the power of the common council to alter and graduate this compensation, from time to time, in reference to the services rendered; but I can find no authority for it to withdraw, and place in other hands, duties which the charter has confided to him, and which he, by his oath of office, and every obligation resting upon a public officer, is bound to discharge.

The counsel is not only required to take charge of, and conduct all the law business of the corporation, but all the law business of the several departments thereof. The powers of the corporation of this city are divided into legislative and executive. The legislative powers are vested in a board of aldermen and board of councilmen, who, together, form the common council of this city. These two bodies, therefore, form the legislative department of the city government, and are as much subject to the provisions of the charter as the executive department. The powers of the latter are vested in the mayor, and the heads of the several departments created by that charter, and each moves in its allotted sphere, subject to the restraints of their common constitutional superior, the charter of the city. It is, therefore, quite apparent that the counsel to the corporation has confided to him, and it is made his duty to conduct, as well all the law business of the legislative department of the corporation, or either branch of it, as to conduct the law business of the several executive departments, and their several bureaus and subdivisions. And it is not easy to see how it is competent for the legislative department, or any of its committees or agents, to pass by the law officer selected by the people, and charged by the charter with these duties, and select and appoint other counsel. If it can be done, it may be equally competent for each of the executive departments, and their several subordinates, to do the same thing.

This certainly would present an anomalous state of affairs. Each department might thus have its own law officer, subjecting the city treasury to enormous drains, while the legally

and duly selected law officer of the city, to whom is given a salary for the discharge of these duties, who has an office and clerks provided for at the public expense, to enable him the more readily to discharge · them, may be sitting idly in his office, and receiving this compensation, without rendering any equivalent. I am quite sure that no such state of things can be allowed under the charter, or that there can be any serious doubts that it cannot be permitted.

If the duties of counsel prescribed by charter can be taken away from him, and confided to others by the common council, or either board, or by any committee thereof, why may not the same thing be done as to those of the mayor, comptroller, or any head of any other department? The simple statement of the proposition carries with it its refutation. If it, however, can be done in the one case, it certainly can in the other.

Section 19 of the charter of 1849, authorizes the common council to establish such other departments and bureaus as they may deem the public may require, and to assign to them and those therein created, such duties as they may direct, *not inconsistent with that act.*

This provision is a clear legislative restriction on the powers of the common council to withdraw any duties confided by the charter to any particular department or bureau, and devolve the same upon any other department or bureau then existing or thereafter to be created.

So long as these plain and unmistakable provisions of the charter continue in force, I can have no doubt that they must be conformed to.

If there could be any doubt of the power of the common council to take upon themselves duties devolved on the departments, it was removed by the decision of this court in the case of *Christopher* agt. *The Mayor, &c.,* (13 *Barb.* 567.) In that case, the board of aldermen assumed to direct the commissioner of repairs and supplies with whom he should make a contract for the rebuilding of Washington Market.

This court held, that a contract not made by the commissioner in pursuance of the charter and ordinances of the city,

would be invalid, and granted an injunction restraining the action of the common council. I am, therefore, constrained to say, that the action of the committee, in the present case, was in direct conflict with the charter, and without authority, and consequently void, and that their employment of the plaintiff's assignor, however meritorious the services he may have rendered, or reasonable the charges made, created no legal liability upon the defendants, and there can be no re covery against them therefor.

Another objection to such right of recovery, even if I am wrong in these views, exists, and which, I fear, is insurmountable; that is, that the act of employment of counsel by this committee is an executive act, which they were incompetent to perform.

It must be quite within the recollection of those who have interested themselves in the affairs of the city government, that prior to 1830, it was deemed a great evil, and one pregnant with most mischievous consequences, for the common council, or its committees, to exercise any executive functions.

That charter provided, that the legislative power of the corporation should devolve upon the board of aldermen and assistants, and that those two boards should together form the common council.

The 21st section of that charter declared, that the executive business of the corporation should thereafter be performed by distinct departments, and which it was made the duty of the common council to organize and appoint for that purpose.

These provisions would seem to have been so clear and specific, that their meaning could not have been misunderstood. Notwithstanding this express declaration of the legislature, that thereafter the executive business of the corporation should be performed by distinct departments, and the common council were enjoined to organize those departments, the common council still continued to perform executive duties, and neglected to organize the departments. This state of things induced the action of the legislature in 1849, when an amended charter was passed. By it, the executive departments were

organized, the duties of each defined; and section nine thereof declared, that thereafter "neither the common council, nor any committee or member thereof, should perform any executive business whatever." This inhibition is plain and specific, and would seem sufficiently certain to remove all doubts of its meaning and intent.

It was well observed, in the case of *Christopher* (*supra*), that there may undoubtedly be some acts which do not come exclusively within either division of the powers of government, and which may, without violence to language, be classed under either head. But the common council have themselves given a practical construction to the meaning of this section, by the passage of an ordinance, permitting the counsel to the corporation to select such additional professional aid as he may deem requisite in the discharge of the duties of his office, with the consent of the mayor and comptroller. Now the plaintiff's assignor was not thus selected, but appointed to this duty by the special committee of the board of aldermen. I think it was one of the main objects of the legislature, in passing this charter, to divest the common council, its committees and members, of all patronage and business, other than legislative, with the exceptions contained in the charter; and that no contract like the one now under consideration, or employment, can create any legal liability upon the defendants. One of the executive acts condemned by this court in the case of *Christopher* (*supra*), was the employment by the committee of the board of aldermen, of an architect to prepare the plans and drawings for the rebuilding of the Washington Market.

Peterson, the architect thus employed, commenced a suit against the corporation, to recover compensation for the services thus rendered, in the New-York common pleas. That court held, that the employment by the committee of the board, did not create a valid contract, which was binding on the defendants, and gave judgment accordingly. I agree with the remark of the presiding judge of that court, in that case, that it, like the one now under consideration, appears to be a hard case for the plaintiff, and that it would be equitable that

he should be compensated for the services which he has rendered; but the obstacles in the way of a recovery in an action against the defendants for such services, appear to me insurmountable.

Judgment for defendants.