Mary Doedt, administratrix agt. Wiswall and others.

## SUPREME COURT.

MARY DOEDT, Adm'x of CHARLES DOEDT, deceased agt. EBENEZER WISWALL and another, Executors of EBENEZER WISWALL, deceased, and others.

"Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued), have entitled the party injured, to maintain an action and recover damages in respect thereof, then and in every such case, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony." (*Laws* 1847, *ch.* 450, § 1.)

" Every such action shall be brought by and in the names of the personal representatives of such deceased person, and the amount recovered in every such action, shall be for the exclusive benefit of the widow, and next of kin of such deceased person, and shall be distributed to such widow and next of kin, in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate; and in every such action the jury may give such damages as they shall deem a fair and just compensation, not exceeding five thousand dollars, with reference to the pecuniary injuries resulting from such death, to the wife and next of kin of such deceased person, provided, that every such action shall be commenced within two years after the death of such person."

" Every agent, engineer, conductor or other person, in the employ of such company or person, through whose wrongful act, neglect or default, the death o a person shall have been caused as aforesaid, shall be liable to be indicted therefor, and upon conviction thereof may be sentenced to a state prison for a term not exceeding five years, or in a county jail not exceeding one year, or to pay a fine not exceeding two hundred and fifty dollars, or both such fine and imprisonment." (*Laws* 1849, *ch.* 256, §§ 1, 2.)

*Held,* that an action against a common carrier of passengers, brought by the personal representatives of the plaintiff, killed, claiming damages under this statute, might be properly brought on *contract.* That is, the above statute (section second) by defining the claim of the personal representatives, to be ounded on the *loss of property,* brings the case clearly within the rules allowing a *waiver of the tort,* and a *suit on the contract.* (*Does the Code admit of different* FORMS *of action on substantially the same facts constituting the cause of action? If the tort is not admitted on the statement of facts, can it be waived?* REPORTER.)

Mary Doedt, administratrix agt. Wiswall and others.

*Held,* consequently, that such an action on contract *survives against the executors of the defendant.*

*Rensselaer Circuit, June,* 1857.

DEMURRER to complaint by the executors of E. Wiswall.

DANIEL GARDNER, *for plaintiff.*

I. The equity rule under the Code prevails as to parties, and all parties in interest within the state must be made parties plaintiffs or defendants. (22 *Barb.* 110, .111, 112 *and* 113; Code, §§ 69, 117, 118, 119 *and* 144; *Van Santvoord's Pleadings, 2d ed., pages* 149, 150, 154, 158, 161, 162, 165.) At page 161–2, Mr. V. says that § 118 of the Code "*will enable plaintiff* to exhaust, in one suit, his remedy against a surviving partner, and the representatives of a deceased partner. And if this doctrine be true, so also, in case of the death of any joint contractor, whenever his estate would be liable in equity." *Ricart* agt. *Townsend,* (6 *How. P. R.* 460,) and 5 *Paige Ch.* 254, are to the same effect.

As this action rests on joint contract of Wiswall, Plum and Silliman with the state, and with the Doedt negligently drowned by them, by their servants and agents, and a joint legal liability arising therefrom, *no question of non-survivorship can arise from death of one joint contractor, and all are properly before the court, the executors representing the personal and property rights of Wiswall, deceased. (See the above authorities, and Campbell* agt. *Perkins,* 4 *Selden,* 435–6–7, 439, 440, *in point; Ferry Act,* 1 *R. S.,* 2d. ed., t. p. 522—4th ed., 1056; 2 *Gray's Mass. R.* 348, 350; 10 *How. P. R.* 97, 102; 10 *Louisiana R.* 33; 6 *How. U. S. R.* 378; *Angell & Ames' Law of Carriers,* 2d ed., §§ 434, 439, and n. 1, 2; 2 *Salkeld R.* 440; *Law of Carriers, Lond. ed.* 1816, *p.* 36; 2 *Kernan,* 244; 3 *id.* 571, 573–4; 2 *R. S.* 2d ed. 50, 51, §§ 2–3; 3 *id.* 649, 781; 4 *Bacon Ab.* 138, 140.) On this ground no question of survivorship arises or can be raised by the executors of Wiswall.

II. The executors of Wiswall can raise no question of non-survivorship of the action arising from Wiswall's death, as the right of action was given to the family of Doedt, origin

VOL. XV. 9

ally founded on a legal right of property in his life, and the contract with Doedt, and its violation being the basis of the legal obligation of duty. (*See Mr. Justice* GOULD's *opinion ; Laws* 1847, *p.* 575 ; *do.,* 1849, *p.* 388 ; *Safford* agt. *Drew,* 3 *Duer's R.* 627 ; 3 *R. S.,* 2*d ed.* 781 ; 2 *id.,* 2*d ed.* 365, §§ 1–2.) If the question of survivorship is to be considered, we say,

III. That the acts (*Session Laws* 1847, *p.* 575, *and* 1849 *p.* 388,) imposed a legal duty on Wiswall, Plum and Silliman to make compensation for the value of Doedt's life, and that the law implies a promise to pay it to the personal representatives of Doedt, plaintiff, and so the action survives, as all actions founded on contracts express or implied by law survive by and against the representatives of any party to the contract. (*See Mr. Justice* GOULD's *opinion in point, and* 20 *John.* 43 ; *Lalor's Sup. to Hill & Denio,* 118, 119 ; 16 *Wend.* 25 ; 19 *Wend.* 239, 240, 242 ; 3 *John. R.* 183–4. *See* 2 *R. S.* 2*d ed.,* 50, 51, §§ 2, 3 ; 3 *id.* 649, 781 ; 22 *Barb.* 404, 412, 413 ; 2 *Kernan,* 628 ; 13 '*How. U. S. R.* 565, *and* 3 *Kernan R.* 80, 81, 82, *as to rule of construction ;* 12 *How. P. R.* 224, 225 ; 23 *Penn. St. R.* 11 *Har.* 526, 528, 530 ; 16 *Barb.* 59, 60 ; 9 *Cushing's Mass.* R. 480 ; 28 *Eng. L. and Eq. R.* 48, 630 ; 3 *Kernan,* 80, 81, 82.) Wiswall and his associates, as licensees of the ferry franchise, were legally bound to ferry Doedt safely, and they so contracted by legal implication with the state and with Doedt, and the negligent killing, violating the contract and passenger carrier's legal duty, the acts of 1847 and 1849, gave to the plaintiff, for the family, a right of action for compensation for the value of Doedt's life, and upon this legal duty the law raises an assumpsit in favor of plaintiff.

IV. The Revised Statutes killed the common law rule and enacted in its stead, *as to torts,* §§ 1 *and* 2 *in* 2 *Rev. St.* 2*d ed.,* 365, 396, 750, 781. Hence, when the acts of 1847, p. 575, and of 1849, p. 388, passed, *making human life a family property,* all actions in behalf of the family survived as though express contract had been the basis of action, and 2 *R. S.* 50, 2*d ed.,* § 2, gave survivorship to all contracts. This is a further conclusive ground of survivorship. (9 *Cushing's Mass.*

*R.* 480, *in point;* *Lalor's Sup.* to *Hill & Denio,* 118, 119; 12 *How. P. R.* 224–5; 3 *Duer,* 627; *Missouri Rev. St.* 1835, §§ 24, 25, *same as our* §§ 1 *and* 2, 2 *Rev. St.* 2*d ed.* 365; 23 *Penn. St. R.,* 11 *Har.* 528, 530; 28 *Eng. L. and Eq. R.* 48; 18 *Missouri R.* 162–3–4; 9 *id.* 493–4–5, 496–7; 21 *id.* 115, 116, 117.) All injuries to "property," "rights," or "interests" of any one survive by our Revised Statutes, §§ 1, 2, 2 *Rev. Stat.,* *p.* 365. As the killing acts make human life a family property, and give it to certain persons, the action survives. (3 *Duer,* 627, *and cases before cited on this point.*) The princi- ple that human life is a family property, to be paid for by those who wrongfully, negligently or by default, occasion its destruction, is an ancient rule of law. The Delphians threw the celebrated Æsop, an ambassador to the Delphian Oracle from an Asiatic prince, into the sea, probably for lampooning by a fable the oracular mysteries and deceptions of the pretended Oracle. After many misfortunes, this people sought to find his family and make payment for his life. The Romans adopted this rule as part of the civil law, and the German nations, France and Scotland incorporated this equitable doctrine into their jurisprudence. The Saxons carried it to England, and it was the law until the Norman Conquest, and then the King's Courts allowed it to fall into disuse. Our acts of 1847 and 1849 have restored this benign law. (23 *Penn. St. R.* 528, 530.) Many states have also adopted it, and it will soon become a settled principle of American jurisprudence.

V. As the acts of 1847 and 1849, and the general ferry act imposed a fixed legal duty on Wiswall, Plum and Silliman to make compensation to Doedt's family, and plaintiff had a legal right to recover $5,000 as the value of his life, the action survives under the third section of 2 *R. S.* 2*d ed.,* p. 50, 51. (*See above cases, and Dayton's Surr.* 2*d ed., p.* 290; *Angell & Ames on Cor.,* 2*d ed.,* §§ 434, 435, *and n.* 1; *Lalor's Sup.* to *Hill & Denio,* 118, 119.)

VI. The action survives, as the legal basis of it is contract implied by law and an express contract with the state. (2

*Rev. St.*, 2d ed. 50, § 2, *and* 3 *Rev. St. Ap. p.* 649 *and* 781.) The section referred to gives survivorship to all actions of which contract is the basis. As to the correctness of this construction, *see* 22 *Barb.* 404, 412, 413; 2 *Kernan*, 628; 3 *How. U. S. R.* 565; 28 *Eng. L. and Eq. R.* 48. It is the plain meaning and obvious intent of the killing acts of 1847 and 1849, to kill the common law dead, dead in all cases within it; therefore individuals and corporations were put on the same basis. (9 *Cushing's R.* 480; 12 *How. P. R.* 224–5; 16 *Barb.* 59, 60; 23 *Penn. St. R.* 528, 530.)

VII. The common law rule, that personal actions die with the person, and to support which, on a former occasion cited various cases, ceased to be applicable to our law when the Revised Statutes went into effect, and his cases do not give our present law, and they must be disregarded. (*See* 4*th*, 5*th and* 6*th points and authorities cited there.*) All that remains of the old rule is found in 2 *R. S.* 365, § 2, which excepts purely personal torts for personal suffering and injury to the person himself or herself, where the action must be case, and not the right of action given to the family. (*See* 3 *Duer,* 627; 2 *Rev. St.* 2d ed. 50, 51, §§ 2, 3, *p.* 365, §§ 1, 2, *and* 3 *id.* 649, 750, 781. *See Mr. Justice* GOULD'S *opinion.*)

VIII. In construing the power given by the license to Wiswall and his associates, he and they take nothing by implication. (11 *Pet.* § 345; 8 *How. U. S. R.* 581.) With this limitation, the intention of the makers of the statutes, the objects they had in view, and the mischiefs to be prevented, will govern the court in interpreting them, and the court will consider a thing within the spirit, though not within the letter of a statute, if these principles lead to that conclusion. (3 *How. U. S. R.* 565; 2 *Kernan,* 630–1; 5 *Selden,* 163, 451, 3–4; 2 *Gray's Mass. R.* 348, 350.) And where two interpretations are practicable, that " which best conforms to the terms, and the objects manifested in the enactment," by the above rule will prevail. (12 *Pet.* 72, 75–6, 83.) And in the latter case the Supreme Court of the United States held that where the words of a statute are general, " the court are not at liberty

to insert restrictions." (*Id.*) It is also a settled rule of law, that a statute granting one or more persons to use a franchise, when accepted and acted on, the licensee or grantee is imperatively bound to the whole legal duty for the term, and in the manner prescribed in the statute. (2 *Gray's R.* 348, 350; 22 *Barb. R.* 412; 9 *How. U. S. R.* 259.)

Common sense and common justice, the law of all mankind, sustains our position, that this action survives.

Mr. Justice GOULD'S opinion, and the judgment given at special term, are in accordance with the ancient, universal and civil law, with the law of France and of Scotland, as well as that of Germany, and of many of our states, and accords with the real intent of our own statutes and improved law, and the judgment ought to be affirmed, with costs.

G. VAN SANTVOORD, *for defendants.*

I. The complaint contains no cause of action against the defendants, the executors, who demur. The actions are brought for causing the death of the plaintiff 's intestate, by " wrongful act, neglect or default," under the act of 1847, as amended by act of 1849. They are actions "*for injuries to the person of the plaintiff's*" intestate, and do not survive. (2 *R. S.* (4*th ed.*) *p.* 690, §§ 1, 2; *Code,* § 121; *People* agt. *Gibbs,* 9 *Wend.* 29; *United States* agt. *Daniels,* 6 *How. U. S. R.* 11; *Hambly* agt. *Trott, Cowper,* 371; *Flynn* agt. *Hudson River R. R.,* 6 *How. Pr. R.* 308.)

1. The precise point has been adjudicated, both at special and general term, in actions brought by these plaintiffs against the defendant's testator in his lifetime, on a motion to substitute his executors as defendants, which motion was denied by Justice HARRIS, and unanimously affirmed by general term. (*See opinion of Judge* HARRIS, 14 *How.* 42.)

II. But the judge who overruled these demurrers makes a distinction between the two classes of cases, namely, that the former were for a *tort* on the face of the complaint, and the cases at bar are on *contract.* This distinction, we maintain, cannot be sustained. And even if it could, as a mere tech-

nical distinction, still the actions, as at present stated in the complaint, are nevertheless actions "*for injuries to the person,*" within the meaning of the statute, and do not continue against the personal representatives.

1. The plaintiff's complaint states that the former suit was "*for the same cause of action.*" The learned judge, in his opinion, treats this allegation in a summary way, by assuming that the pleader does not mean what he says, but only that the suits were " for the same occurrence."

2. Admitting such to be the meaning of the allegation, these suits are, nevertheless, for " the same cause of action." The reasoning of the court below rests upon the basis that every legal liability incurred by a common carrier, for negligence, involves two different causes of action. This we conceive to be the radical fallacy which vitiates the entire argument of the learned judge who delivered this opinion, because,

3. There is not and never was any such thing as two different " causes of action " growing out of an entire or single act of negligence or default of a common carrier. Under the former practice, the plaintiff had two different *forms of actions*, one in form of contract, and one in form of *tort*. In theory, the latter was based upon the *wrongful* (or if the term be preferred, *criminal*) act, and the plea of not guilty was interposed as the defence. The former was based upon an *implied* contract, which was always required to be alleged in the declaration, but was a mere *fiction* which common law pleadings allowed, or at best, a mere legal inference or conclusion.

4. The confusion arises from endeavoring to maintain these distinctions when they have been forever obliterated and swept away by the Code. " All the *forms* of pleading heretofore existing are abolished." (*Sec.* 140, *Code.*) There is, therefore, now not the slightest distinction, and cannot be, between setting forth against a carrier a cause of action for his direct negligence, and a cause of action for his dereliction of duty arising from his implied contract. It is exactly one and the same thing. " Every action is now an action on the case." (*Minor* agt. *Terry*, 6 *How.* 208 ; *Field* agt. *Stone*, 7 *How.* 12.)

5. Besides, it is of no sort of consequence (though the opinion assumes the contrary) that the word "contract" is used in the complaint. This was heretofore used to fix the *form* of the action, but did not and cannot now in any degree change the nature of the transaction which creates the liability. The *fiction* or *legal inference* of an implied contract cannot now be properly set forth in a pleading, but the *facts* from which the legal inference is drawn must be alleged. (*Eno* agt. *Woodworth*, 4 *Coms*. 249 ; *Glenny* agt. *Hitchings*, 4 *How*. 98.) Now, in this case, there are but a single set of facts, namely that defendants' testator was a carrier of passengers under license; that his servant received the plaintiff's intestate on board the ferry boat, and so negligently conducted it that plaintiff's testator was drowned. To go farther and set forth the *implied contract* to carry the passenger safely, growing out of the *duty* of a common carrier, is dealing not with facts, but with legal inferences, which the court alone must draw. There is, therefore, under the Code only *an action* against a common carrier, not an action in form on *contract*, or an action in form in *tort*, but *an action* resting upon one entire series of facts, from which but a single legal liability arises.

III. What then is the nature of these actions ? Are they for injury to property, or to the person ? Clearly the latter. And this of course must determine the question whether they continue against the personal representative or not. That they do not survive to the plaintiff's representatives or continue against the defendant's representatives, is clearly evident from the language of the statute itself.

"§ 2. The preceding sections shall not extend to actions for slander, for libel, or to actions for assault and battery, or false imprisonment, *nor to actions on the case for injuries to the person of the plaintiff, or to the person of the testator or intestate, if an executor or administrator.*" (2 *Revised Statutes. (4th ed.*) *p.* 690.) And it is only by virtue of the acts of 1847 and 1849, that the representatives of the person injured can maintain an action against "the person who, or the corporation which would have been liable if death had not ensued,"

(*Laws* 1847, *p.* 575.) And no right of action is given by these statutes against the personal representatives.

1. It will not seriously be contended that before these acts, an action on contract, or any other action, could have been maintained by the representatives of the party injured in these cases. The acts were passed expressly to give this new remedy ; and creating as they do a new remedy, unknown to the common law, they must *be strictly construed.* (*Smith* agt. *Lockwood,* 13 *Barb.* 209.)

2. It seems to be assumed by the court below that because an action for the injury (had the party not died) might have been brought by him on the implied contract, *therefore* they survive by statute. This is clearly not so, because,

3. The statute excepts " *actions on the case for injuries to person,*" &c. Now an action on the case might have been brought as well for the breach of a simple contract as for the commission of a wrong. The form of action in assumpsit against a common carrier for injuries to the person, referred to by the learned judge, (2 *Chit. Pl.* 362,) is an *action on the case,* as were all actions of assumpsit, " trespass on the case on promises." (2 *Chit. Pl.* 11.) But that very form indicates precisely the class of actions which do not by statute survive, viz : actions on the case (whether in assumpsit or *tort*) *for injuries to the person.*

4. Had the actions been against the carrier for injury to personal *property,* they might have survived by statute, whether framed in contract or tort. But there is no property mentioned or claimed in the complaint, or alleged to have been lost or injured—the only damage or injury being the death of the plaintiff's intestate.

IV. But it is said that the statutes of 1847 and 1849, creating this new remedy, make life a property, and therefore the action is not *for injury to the person.* And so it seems to be regarded in the opinion of the court overruling these demurrers. " A sort of statute life insurance against loss from specific risks," says the court. Such an artificial and overstrained construction will not stand the test of criticism ; for,

1. In the first place, if such a statutory life insurance had been intended, not as against the wrongdoer only, but against his personal representatives, would it not have been made to extend as well to the case of wilful, as of negligent killing? Can the statute be construed as a life insurance against the carrier's negligence, in case of his death, but not against his wrongfully causing the death of another person by violence or assault? The law would not tolerate such an anomaly. The one is no less an injury to the person than another.

2. The statute itself authorizes no such construction. The first section, and that alone, creates the liability, and it is for " damages," when death shall be caused by "wrongful act, neglect or default."

3. True, the damages are given by the second section to the widow and next of kin, and the jury are to regard the "pecuniary injury " to them resulting from such death, in estimating the damages. The statute was doubtless created for their benefit; but nevertheless the damages are such as result from "injury to the person." The section simply regulates the mode of distribution of the damages, excluding the creditors, and securing such damages to the widow, &c. It undertakes neither to create nor define any new right of property.

V. The complaint contains no more an action on contract than it does an action for tort; both are attempted to be joined, and the demurrer, for that cause, should be sustained.

VI. If the complaint be upon contract, as the court below assumes, then (the contract being of course joint) the complaint is fatally defective in joining the Wiswall executors with the surviving joint contractors. This ground is expressly stated in the demurrer, and it is not clearly perceived for what reason the court regarded the point as not before it. It was well settled before the Code, and has been repeatedly decided since, that surviving joint contractors alone should be sued, and the plaintiff has no right to unite with them the representatives of a deceased joint contractor. (*Higgins* agt. *Freeman*, 2 *Duer*, 650; *De Agreda* agt. *Wantel*, 1 *Abbott's Pr. R.* 130; *Morehouse, ex'r.* agt. *Ballou*, 16 *Barb.* 289, *and cases cited by*

*Judge* HAND.) The order overruling demurrers should, therefore, be reversed.

GOULD, Justice. This action is *intended* for an action on *contract*, against the proprietors of a ferry franchise; the claim being meant for one that such ferry proprietors *agreed* for hire, to carry Charles Doedt, "safely," across the river, (including in "safely" the *care and skill* required for safe carriage;) and the breach of the contract consisted in stowing and managing the ferry boat, "with want of skill and care and with negligence," whereby the ferry boat was swamped, and Charles Doedt was drowned; ending with a claim, that his life was, to his estate, of the *pecuniary value* of $5,000; and founding the right of action on the statutes of 1847 and 1849.

I have said the action is *intended* to be on contract; because the allegations of the cause of action are in *no form* whatever; and "a common understanding," (without *legal* information,) would be very much puzzled to give their meaning. Their lack of clearness and precision is carried to the very limit of what is sometimes said to be the effect, (as well as the intention,) of the Code, viz: that parties come into court and tell their own story, and the court is to apply the proper relief; (a state of things making the duties of the court anything but light or agreeable.) Still, as I am unable to see *any* reason for alleging a *contract*, unless the action were to be founded on it; and as a party has the absolute right to state just such a cause of action as he pleases, provided he states what *is a cause* of action, I consider this action (as laid) *sounding in contract*.

It thus varies entirely from the actions heretofore commenced by the same parties, against Ebenezer Wiswall, (now deceased,) in his lifetime. The complaints in those actions *professed to be for torts*—were so *on their face;*—and were without any shadow of a suggestion of the existence of any *contract* in the premises. So that, (granting the circumstances to be such as would allow a party to *waive the tort*, and *sue on the contract*,) in those causes the tort was *not* waived; but *it*, and not the contract, was sued on. Mr. Justice HARRIS decided,

on a motion to revive those suits against Wiswall's executors, that the cause of action was for an *actual tort*, and did not survive; and denied the motion. On appeal to this court, at general term, that decision was unanimously affirmed; and in that affirmance I concurred. There was, however, no opinion given by the court; and so far as the opinion of that learned judge (as published) goes beyond the very point decided in those suits, the general term cannot be said to have given either decision or opinion. I therefore treat the case before me as one that has not been *directly* heard, or passed upon, at either a general or special term; giving to it the most careful consideration I can, and not doubting that a free expression of opinion is the surest way of attaining, (before an ultimate tribunal,) a satisfactory, as well as a final decison.

It thus becomes necessary for me to examine into the effect, (if there be any,) of this *change* in the allegation of the cause of action, and to see whether, as thus alleged, there *be* a cause of action. The determination of these two points will carry with it the remaining ground of the demurrer; which is that the action does *not survive against* the representatives of the *personal estate* of E. Wiswall, deceased. And it is well, in this connection, to note that executors, &c., (though called *personal* representatives,) represent not the *person*, but the *personal estate*. I treat as of no moment the plaintiff's averment that, in E. Wiswall's lifetime, she commenced against him " an action for the *same* cause of action," &c., as it plainly means " for the same occurrence ;" without saying that the complaint, in that case, *stated the same ground for the suit* that is stated in this case.

To begin at the foundation of the claim, do the *facts* stated, constitute *a cause of action on contract?* At common law, the general rule certainly is, that where the cause of action *is a tort*, or arises *ex delicto*, and *must be declared upon as a tort*, the executor is *not* liable. And the *reason* therefor is two fold : 1st. The testator's *property* (*which* the executor represents) was not *augmented* by the wrong, (meaning not merely by *the tortious act itself*, but by the *transaction, in the course of which the tortious*

*act was done ;*) and 2d, the *plea* must be *not guilty ;* so, on the face of the record the charge is of a private criminal injury or wrong ; and such, as well as public crimes, are buried with the offender ; and the law will not allow the trial of an issue as to the *guilt* of a deceased person.   (*Toller's Executors*, 361–2, 460 ; *Cowper*, 375.)

But, at common law, where the *estate* of the party doing or omitting the *act* complained of, was increased *by the transaction, during which the default or neglect occurred,* (as where the transaction was *in the line of his business, from which he received a profit to his estate,*) the representative of *that estate*—the executor—was always held liable to the party injured, in an action *on contract,* whether there were, *in fact,* an express contract, or only the *implied contract* which the *law* supplies where the facts warrant it.   Thus Sir THOMAS RAYMOND, (*p.* 71, 72,) in a case held *not* to lie, (*because* it was *in form* tort, and the plea *not guilty,*) cites *Savill's Rep.* 40 ; which case is cited and approved in *Cowper*, 376, thus : MANWOOD, Justice, said, " in every case where any price or value, is set upon the thing in which the offence is committed, if the defendant dies, his executor shall be chargeable ; but where the action is for damages only, in satisfaction of the injury done, then his executor shall not be liable."   That was a suit for cutting down and carrying away trees by testator, and the executor was held liable for the value of the trees, not for damages for the trespass.   The very case in *Cowper*, (*Hambly* agt. *Trott, p.* 371, *&c.,*)—which is considered by the defendants as emboying the whole strength of the law in their favor—was in form, trover, and the plea not guilty.   And though there it was held, that the executor was not liable, yet (*at p.* 377) Lord MANSFIELD gives the unanimous opinion of the court thus : " The form of the plea is decisive, viz : the testator was not guilty ; and the issue is to try the guilt of the testator.   And no mischief is done," (by deciding that suit against the plaintiffs,) " for so far as the cause of action does not arise *ex delicto* or *ex maleficio* of the testator, but is founded on a duty which the testator owes the plaintiff upon principles of civil obligation, another form of ac-

tion may be brought, as an action for money had and re-ceived," (which is on a contract implied by law, from the duty or obligation, and not on an express contract.) He thus says, expressly, that though the facts showed an actual tort, the party injured, (in a case where there was arising out of the same facts, a legal duty, from which the law implied a contract,) might waive the tort, and sue on the contract, and the executor would then be liable.

These principles go further than the case of negligence in a common carrier, for they imply a contract out of a mere duty; whereas, it has always been held, that a common carrier, by receiving goods or persons to carry for hire, necessarily agrees to carry, &c., with proper care and skill. There is a very well considered case in (2 *New Rep.* 395, *&c., Powell* agt. *Layton,*) where the declaration was for loss of goods by negligence, with no word in the pleading of any contract, and the defendant pleaded in abatement, the non-joinder of his two partners in the carrying trade; and (though pleas in abatement are never favored) the plea was sustained, the court holding that the action was founded on contract, and of necessity, that the negligence was merely introduced to show the breach of the contract. (*See* 2 *New Rep.* 367 *to* 373, *and also* 5 *Esp. Cas.* 32, *Day's edition, note* 1, *third paragraph.*)

That this ground of liability extends to injuries to the person of a passenger, see an express decision in an action of assumpsit for such injuries, (2 *Campb.* 79 *to* 81,) where it is said by Sir J. MANSFIELD, Ch. J., that the carrier " did not warrant the safety of the passengers. His undertaking as to them, went no further than this; that as far as human care and foresight could go, he would provide for their safe conveyance." And (*Chitty's Pleadings,* 2d *vol. p.* 362,) gives the proper form for declaring in assumpsit, for such injuries.

But common law decisions will be found to come still nearer to the case before us. (*Chitty's Pleadings, vol.* 1, *p.* 102,) says, " an action of assumpsit may be maintained against the executor of an attorney for unskilfulness or carelessness in the conduct of a cause, or other professional business in which the

testator was employed." And for this, he cites the very case decided (in a suit for pecuniary loss caused by the attorney's negligence,) in 3 *Starkie Rep.* 154 ; *S. C.*, 3 *Eng. Com. L. Rep.* 634.

Before attempting to apply that decision to this case, it is necessary to inquire how far the circumstance of the killing affects the position of the parties ; and this involves the consideration of the statutes of 1847 and 1849. (*Laws* 1847, 575, 576; *Laws* 1849, 388, 389.) For greater accuracy, I quote: " Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, (if death had not ensued,) have entitled the party injured to maintain an action, and recover damages in respect thereof, then the person, &c., who would have been liable, if death had not ensued, shall be liable to an action for damages notwithstanding the death." And by the second section, this action is given to the personal representatives of the deceased person, the amount recovered to be distributed to the next of kin; and this section adds, " the jury may give such damages as they shall deem fair and just, with reference to the pecuniary injury resulting from such death to the next of kin."

It should further be observed, that the first section gives the action, " although the death shall have been caused under such circumstances as amount, in law, to felony." Thus showing the intention to compensate the next of kin, (through the representative of the personal estate,) for the pecuniary loss, whether the killing act be a crime or a chance; a wilful and forcible attack, or an act positively careless; or a mere neglect to use such care and skill as (in the circumstances of a particular case,) the law says it is the duty of the party to use.

I would also observe on this first section, that while it uses the words, (that if the manner or nature of the injury be such that the party injured, if not killed, could maintain,) " an action and recover damages in respect thereof ;" the subsequent words constitute a positive enactment, making the actor liable to " an action for damages," (not to the person who was personally injured, but) to some one else. Now the phrase " an

Mary Doedt, administratrix agt. Wiswall and others.

action and recover damages in respect thereof," gives no inti-
mation as to what shall be the legally stated "cause of action;"
and the party injured, (if not killed,) as truly "recovers dam-
ages in respect thereof," when (in a case legally proper,) he
waives the tort and sues on the contract, as when his suit is
technically for the tort. Besides, even were the act, &c., such
that the party injured (if not killed,) would be compelled to
found his complaint on tort, the section in giving "an action
for damages," (to some one else,) does not, in terms, or neces-
sarily, give to that some one else the action—the same action —
(either in form or ground therefor, as the second section proves,)
which the living, injured party would have had; but "an ac-
tion,"—any action to which the rules of the law, as applied to
the facts, entitle the party suing. And, as just noted, the sec-
ond section proves this to be the true construction of the first;
for it explains the word "damages," to mean just what it does
in an action on a note, (a pecuniary compensation, and not
what is understood by "damages," in an action for assault
and battery,) and says the damages are to be such as are fair,
"with reference to the pecuniary injury resulting from such
death;" and, not stopping there, it adds, it must be for such
pecuniary injury, "to the next of kin," (the takers of the per-
sonal estate, who assuredly have suffered no personal wrong,
have sustained no violence, felt no assault and battery.) The
section puts no estimate on, gives no place for any element of
wilfulness, any circumstances of outrage, any degree of suffer-
ing, any matter of mere aggravation. It is thus within the
very scope of *Cowper*, 372: "An action founded merely on an
injury done to the person, where no property is in question,
dies with the person, as in assault and battery, and the like.
But where property is concerned, the action remains, notwith-
standing the death," of the party liable. For, however un-
pleasantly it may strike us, these statutes have created (in the
next of kin) a property interest in the death of the person
killed, accruing like dower, at and by the death; the value of
which, and no more, (as in assumpsit on the *quantum valebat*,)
is the rule of "damages." It is, in effect, a sort of statute life

insurance against loss from specified risks; the interest in the amount assured, accruing and becoming vested, by the fact of the death, in the party to whom it is payable. I can hardly conceive a closer application of the principle of the oldest reported case, as cited from Justice MANWOOD, above. By force of the statute, a " price or value is set upon the thing in which the offence is committed." And here may also be applied Lord MANSFIELD's remark, (*Cowper*, 377,) that " so far as the action is founded in a duty which the testator owes the plaintiff," (the obligation to pay the pecuniary loss he has caused, not to the party killed, but to the plaintiff or those she represents,) "upon principles of civil obligation another form of action may be brought," which would survive against the executor of the party liable.

As a common carrier of passengers then, on the principles, and by the cases above cited, Ebenezer Wiswall, deceased, was, in the circumstances of this case, liable to a party injured (and not killed) in an action on contract; and that action would survive against his executors. By the statutes cited, an action for the same occurrence being given to the executors of the party killed, they, were the statutes silent on the point, must be at liberty to allege the same cause of action that the party injured (if not killed) could have alleged; the death certainly not changing the cause of action from contract to tort. But were this doubtful, or even ruled to the contrary, the second section, by defining the claim of the executor to be founded on the loss of property, brings the case clearly within the rules allowing a waiver of the tort, and a suit on the contract.

To this view of the case I conceive the statute, cited by both parties, (2 *Rev. St.* 2*d part*, 8*th chap.* 3*d title*, 2*d section*,) can have no application. The person killed is not the plaintiff. The action itself never did and never could belong to the party killed. It is a statute right of property, for which the statute gives an action; and the whole matter was utterly unknown, it had no existence, when this section of the Revised Statutes was passed, twenty years before that of 1849. But had it been in existence, I do not see how the words " nor to actions **on**

the case for injuries to the person," can have any other fair construction than this—actions, which being on the case, (a technical phrase,) are for a tort, and require the plea of not guilty; certainly not touching an action on contract, or one for pecuniary loss.

I hold this action to be properly on contract, and to survive' against Ebenezer Wiswall's executors.

The question as to the propriety of joining with them the surviving partners of Ebenezer Wiswall, is not now before me. Therefore, without any intimation on that point, judgment is ordered for plaintiff on the demurrer, with leave to the defendants demurring, to answer in thirty days, on paying costs, to be adjusted by the clerk.

*Albany General Term, September*, 1857.

IRA HARRIS, GEO. GOULD, DEODATUS WRIGHT, *Justices*.

This decision affirmed. D. WRIGHT, giving the opinion. HARRIS, J., dissenting.