Chief Judge Desmond.
Defendant is a common carrier of passengers by air. Plaintiff’s intestate, a passenger on one of defendant’s planes, was killed in August, 1958 when the airship crashed and burned at Nantucket, Massachusetts, in the course of a flight from a New York airport. The complaint pleads three causes of action but this appeal has to do, immediately, with the second count only. That part of the complaint has been dismissed for insufficiency by the Appellate Division which reversed Special Term’s denial of defendant’s motion to dismiss. Plaintiff appeals here from the dismissal. We shall have occasion farther on in this opinion to discuss the first cause of action in *38 which plaintiff sues under the Massachusetts wrongful death statute.
The disputed second cause of action alleges that plaintiff’s intestate before boarding the plane at La Guardia Airport bought from defendant a ticket for transportation to Nantucket, that defendant by causing his death in the crash breached its contract to carry him safely and that as a result the passenger’s estate and his dependent suffered substantial damages (stated as $150,000) for which his administrator sues and which include “ loss of accumulations of prospective earnings of the deceased.” There was in effect at the time of this disaster section 2 of chapter 229 of the General Statutes of Massachusetts which gave a cause of action against a common carrier for negligently causing a passenger’s death but limited to not less than $2,000 or more than $15,000 the damages to be awarded therefor. Special Term, citing Dyke v. Erie Ry. Co. (45 N. Y. 113) and other authorities, held that plaintiff could sue in contract and that the law of New York, the place of contract, governed such a cause of action and not the law of Massachusetts, the place of the wrong. The Appellate Division, considering the Dyke decision inapplicable, took the position that the second cause of action, however labeled or phrased, is in tort for negligently causing death and as such is subject to the damage limitation of the Massachusetts wrongful death statute.
Plaintiff’s submission as to this second count is that it sounds in contract and so is governed for all purposes by the law of New York, the place of contract. If the alleged contract breach had caused injuries not resulting in death, a New York-governed contract suit would, we will assume, be available (Dyke v. Erie Ry. Co., 45 N. Y. 113, 117, supra; Busch v. Interborough R. T. Co., 187 N. Y. 388; Fish v. Delaware, L. & W. R. R. Co., 211 N. Y. 374, app. dsmd. 245 U. S. 675; Restatement, Conflict of Laws, § 337). But it is law long settled that wrongful death actions, being unknown to the common law, derive from statutes only and that the statute which governs such an action is that of the place of the wrong (Whitford v. Panama R. R. Co., 23 N. Y. 465; Baldwin v. Powell, 294 N. Y. 130). Language found in the old case of Doedt v. Wiswall (15 How. Prac. 128, 141, affd. 15 How. Prac. 145) cannot be used to overrule so basic a rule. It follows, as the Appellate Division correctly held here, *39 that plaintiff as administrator has no separate right to sue this carrier in contract for causing his intestate’s death (Webber v. Herkimer & Mohawk St. R. R. Co., 109 N. Y. 311), that the cause of action for injuries did not survive (Bernstein v. Queens County Jockey Club, 222 App. Div. 191, and cases cited therein), and that the second cause of action had to be dismissed.
That does not mean, however, that for this alleged wrong plaintiff cannot possibly recover more than the $15,000 maximum specified in the Massachusetts act. Modern conditions make it unjust and anomalous to subject the traveling citizen of this State to the varying laws of other States through and over which they move. The number of States limiting death case damages has become smaller over the years but there are still 14 of them (compare the list in Tiffany, Death by Wrongful Act [1st ed., 1893], p. xvii, with the data found in Martindale-Hubbell Law Digests, 1960 ed., Yol. IV). An air traveler from New York may in a flight of a few hours’ duration pass through several of those commonwealths. His plane may meet with disaster in a State he never intended to cross but into which the plane has flown because of bad weather or other unexpected developments, or an airplane’s catastrophic descent may begin in -one State and end in another. The place of injury becomes entirely fortuitous. Our courts should if possible provide protection for our own State’s people against unfair and anachronistic treatment of the lawsuits which result from these disasters. There is available, we find, a way of accomplishing this conformably to our State’s public policy and without doing violence to the accepted pattern of conflict of law rules.
Since both Massachusetts (General Statutes, ch. 229, §§ 1, 2, as in effect in Sept. 1958) and New York (Decedent Estate Law, § 130) authorize wrongful death suits against common carriers, the only controversy is as to amount of damages recoverable. New York’s public policy prohibiting the imposition of limits on such damages is strong, clear and old. Since the Constitution of 1894, our basic law has been (N. Y. Const., art. I, § 16; N. Y. Const. [1894], art. I, § 18) that “ The right of action now existing to recover damages for injuries resulting in death shall never be abrogated; and the amount recoverable shall not be subject to any statutory limitation.” Each later revision of the State Constitution has included this same pro *40 hibition against limitations of death action damages. The reasons for its adoption are set forth in the proceedings of the 1894 Constitutional Convention (see discussion in Lincoln’s Constitutional History of New York, Vol. III, pp. 57-65, and in Medinger v. Brooklyn Heights R. R. Co., 6 App. Div. 42 [1896]). New York’s original wrongful death law (L. 1847, ch. 450), passed very soon after Lord Campbell’s Act became law in Great Britain, had like the latter no restriction as to damages. The Legislature later imposed such limits but the convention which drew the 1894 Constitution rejected and forbade theriíy “ The argument which evidently controlled the convention in its action consisted of the claim that the arbitrary limitation was absurd and unjust in measuring the pecuniary values of all lives to the next of kin by the same arbitrary standard ” (Justice Hatch in Medinger opinion, supra, p. 46). The absurdity and injustice have become increasingly apparent in the six decades that have followed. For our courts to be limited by this damage ceiling (at least as to our own domiciliarles) is so completely contrary to our public policy that we should refuse to apply that part of the Massachusetts law (see Mertz v. Mertz, 271 N. Y. 466, 471; Shannon v. Irving Trust Co., 275 N. Y. 95, 102, 103). The Massachusetts cases likewise say that Massachusetts will enforce the lex loci delicti in wrongful death suits unless Massachusetts public policy forbids (see Higgins v. Central New England R. R. Co., 155 Mass. 176; Jackson v. Anthony, 282 Mass. 540, 545, 547).
An illustration of our readiness to reject such arbitrary limitations, on public policy grounds, is Conklin v. Canadian-Colonial Airways (266 N. Y. 244). In the Conklin suit plaintiff’s intestate had purchased in Albany a plane ticket to Newark, New Jersey, which on its face limited to $5,000 defendant’s liability for negligently causing a passenger’s death. That limitation, just like the limitation here in question, was contrary to New York’s public policy but valid in New Jersey which was the place of the plane disaster and of defendant’s alleged wrongdoing. The public policy which allowed us to strike down the contractual limitation in Conklin’s case has no less effect here. We will still require plaintiff to sue on the Massachusetts statute but we refuse on public policy grounds to enforce one of its provisions as to damages.
*41 Actually, we have in Wooden v. Western N. Y. & Pa. R. R. Co. (126 N. Y. 10, 16-17) a flat holding by our court that, in an action brought for causing a wrongful death in Pennsylvania, the New York courts would enforce our limitation of damages (as it then existed) although Pennsylvania had no such limitation. The reason, equally pertinent here, is that the ‘ ‘ restriction pertains to the remedy rather than the right ” (p. 16) and “ does not strictly affect the rule of damages, but rather the extent of damages, and that extent, as limited or unlimited, does not enter into any definition of the right enforced or the cause of action permitted to be prosecuted." Louchs v. Standard Oil Co. (224 N. Y. 99) does not overrule Wooden (supra). Looking at the true holding of the Louchs case (supra) rather than picking out language from the opinion, we find that the court was merely deciding that the minimum set for recovery in the Massachusetts wrongful death statute did not make it a “penal statute” unenforcible here because contrary to our public policy (see Chief Judge Cabdozo’s reference to Loucks in Wikoff v. Hirschel, 258 N. Y. 28, 30).
As to conflict of law rules it is of course settled that the law of the forum is usually in control as to procedures including remedies (Franklin Sugar Refining Co. v. Lipowicz, 247 N. Y. 465, 468; Russell v. Societe Anonyme, 268 N. Y. 173, 181). However, as Professor Leflar says (Conflict of Laws, § 60), remedial and substantive “ shade into each other constantly” and “ the law of the forum normally determines for itself” whether a given question is one of substance or procedure. This is the conventional approach and was the one used in the only New York appellate decision on the subject (Murray v. New York, O. & W. R. R. Co., 242 App. Div. 374; see Collins v. American Auto. Ins. Co., 230 F. 2d 416, 422; 32 N. Y. U. L. Rev. 786; Restatement, Conflict of Laws, § 584). As to whether the measure of damages should be treated as a procedural or a substantive matter in wrongful death cases, there is authority both ways (see, for instance, Walton School of Commerce v. Stroud, 248 Mich. 85) and no controlling New York decision except the statements quoted in an earlier paragraph of this opinion from the Wooden decision (126 N. Y. 10, 17, supra). It is open to us, therefore, particularly in view of our own strong public policy as to death action damages, to *42 treat the measure of damages in this case as being a procedural or remedial question controlled by our own State policies. , # /
Some of the older Federal cases (see Northern Pacific R. R. Co. v. Babcock, 154 U. S. 190; Slater v. Mexican Nat. R. R. Co., 194 U. S. 120, 126) gave defendants the benefits of limitations of damages found in the law of the place of wrong, regardless of where the actions were brought. Those cases, however, are not binding on us and do not bring into play the full faith and credit clause of the Constitution (see Wells v. Simonds Abrasive Co., 345 U. S. 514). We think that time has proven the wisdom and practicality of the Slater case dissent, which adopted the rule of Wooden v. Western N. Y. & Pa. R. R. Co. (supra).
From all of this it follows that while plaintiff’s second or contract cause of action is demurrable, his first count declaring under the Massachusetts wrongful death action is not only sustainable but can be enforced, if the proof so justifies, without regard to the $15,000 limit. Plaintiff, therefore, may apply if he be so advised for leave to amend his first cause of action accordingly.
The judgment appealed from should be affirmed, with costs.
Fttld, J. (concurring). I, too, believe that the judgment dismissing the contract cause of action alleged in the second count of the complaint should be affirmed. However, having made that determination, I would go no further. . , /, i
To expatiate on this, I would say that, while I agree that the second count — the only one before us—fails to state a cause of action, I find no warrant or justification for going beyond that single issue and considering, sua sponte, questions which underlie the complaint’s first count alleging a cause of action for wrongful death under the Massachusetts statute. I do not mean to suggest that, in passing upon a case, a court is confined to the authorities furnished or the arguments advanced by counsel, for I deem it clear that, within certain limits, a court is free to reach a decision concerning the issue posed on any ground available. (See, e.g., Rentways, Inc., v. O’Neill Milk & Cream Co., 308 N. Y. 342, 349.) But, as I have already indicated, this does not entitle a court to discuss or decide an issue which not only is not argued by the parties, but actually is not raised or presented by the record.
*43 In this case, the court is called upon to decide only the sufficiency of the second cause of action, sounding in contract, and, quite obviously, whether the monetary limitation specified in the Massachusetts wrongful death statute may be disregarded has nothing whatsoever to do with that decision. Consequently, I feel constrained to limit my discussion to the validity of the contract cause of action. Decision on the question whether the maximum prescribed by the Massachusetts statute measures the amount which the plaintiff may recover on his first cause of action should await an appeal where that issue is presented and the parties have had an opportunity of briefing and arguing it.
As to the question before us, the sufficiency of the contract cause of action, one might well begin by noting that in Baker v. Bolton (1 Camp. 493), decided in 1808, Lord Elleitborottgh declared, by way of dictum, that, “ In a civil court, the death of a human being could not be complained of as an injury ”. Learned authors attacked the rule thus announced as ‘‘ obviously unjust ”—it had as its consequence that “ it was more profitable for the defendant to kill the plaintiff than to scratch him ” (Prosser, Torts [2d ed., 1955], p. 710)—and as being “based upon a misreading of legal history”. (3 Holdsworth, History of English Law [3d ed., 1923], p. 336; see, also, Salmond, Torts [12th ed., 1957], p. 625; Winfield, Death as Affecting Liability in Tort, 29 Col. L. Rev. 239, 252-253.) Nevertheless, harsh and anomalous though it was, the rule prevailed in England and in this country until the enactment of wrongful death statutes. (See 2 Harper and James, The Law of Torts [1956], pp. 128A-1285; Prosser, op. cit., pp. 709-710; Salmond, op. cit., pp. 623-625.).
Although it appears that in England, even before enactment in 1846 of the wrongful death statute known as Lord Campbell’s Act, it had been held that, “ where death is caused by the breach of a carrier’s implied contract for safe carriage, the executor or administrator, although he could not sue in tort, [could] sue in contract, and recover damages suffered by the decedent’s estate ” (Tiffany, Death by Wrongful Act [2d ed., 1913], p. 21; see, also, Salmond, op. cit., p. 624), no such exception seems to have been recognized in the United States. In fact, in New York, this English exception for wrongful death arising out of a breach of contract of safe carriage was disavowed in this court as early as 1866 in the case of Green v. Hudson Riv. R. R. *44 Co. (2 Keyes 294; 2 Abb. Ct. App. 277, affg. 28 Barb. 9), where the complaint alleged ‘ ‘ that the deceased became a passenger on a train from Albany to New York, under the usual engagement to be safely carried, and that by the gross carelessness and unskillfulness of the defendant’s agents, a collision occurred, by means of which the said [passenger] was then and there killed ” (28 Barb. 9, 14). Although the rule was acknowledged to be “ harsh or narrow ” (2 Keyes, at p. 303; 2 Abb. Ct. App., at p. 286), the court, nevertheless, denied recovery and concluded that ‘ ‘ It is sufficient that the rule is settled so firmly that courts would travel beyond their province into the boundaries of legislation by any attempt to alter it, or to create, by their decision, causes of action not before known ” ( 2 Keyes, at p. 295; 2 Abb. Ct. App., at p. 279; see also, Duncan v. St. Luke’s Hosp., 113 App. Div. 68, affd. 192 N. Y. 580).
Thus, whatever may have been the English rule as to recovery for death arising out of a breach of contract of safe carriage, in New York, at least, there was no recovery at common law. The question arises, then, whether, following enactment of a wrongful death statute in this State, an action could be brought on contract for damages for death resulting from the breach of a carrier’s agreement. The answer seems to be in the affirmative where the wrongful act causing death, as well as the agreement, occurred in this State. (See Doedt v. Wiswall, 15 How. Prac. 128, affd. 15 How. Prac. 145; cf. Greco v. Kresge Co., 277 N. Y. 26, 34, citing the Doedt case with approval; Roche v. St. John’s Riverside Hosp., 96 Misc. 289, affd. 176 App. Div. 885; Keiper v. Anderson, 138 Minn. 392.)[1] This, though, does not resolve the problem presented by the case before us, where, although the agreement of safe carriage was made in New York, the wrongful act causing death occurred elsewhere,
If this were, a matter of first impression, it might be effectively argued that, where “ two or more communities are touched or *45 affected by a factual sequence ”, the “ guide to the governing law ’ ’ should be the jurisdiction having ‘1 the most significant contact or contacts ” (Harper, Policy Bases of the Conflict of Laws: Reflections on Rereading Professor Lorenzen’s Essays, 56 Tale L. J. 1155, 1161). And, since the contract of safe carriage was undertaken in New York and since this fact provides a more “ significant contact” than the adventitious occurrence of the crash in Massachusetts, it might well be further urged, this State’s wrongful death statute and not that of Massachusetts should apply.
Impressed though I am by the theoretical soundness of such a position, I am forced to the conclusion that it is foreclosed by our decisions, In Crowly v. Panama R. R. Co. (30 Barb. 99), which presents a fact pattern not unlike that in this case, the plaintiff’s intestate had entered into a contract of safe carriage in New York and was killed as the result of acts of negligence of the carriers in Panama. Although Panama had no wrongful death statute at the time, New York did, and the plaintiff attempted to bring himself under that statute by arguing that “ the contract was made, and the fare paid, in this state ” (30 Barb., at p. 109). The court rejected this argument and dismissed the complaint. Not only has the Growly decision been cited with approval by this court (e.g., Leonard v. Columbia Steam Nav. Co., 84 N. Y. 48, 53; McDonald v. Mallory, 77 N. Y. 546, 550; Widtford v. Panama R. R. Co., 23 N. Y. 465, 475), but we have categorically declared, and quite recently, that our wrongful death statute (Decedent Estate Law, § 130) ‘' applies only to actions brought for damages for a wrong committed here causing the death of a person ’ ’ and is to be given no extraterritorial effect in cases where injury and death occur outside of the State. (Baldwin v. Powell, 294 N. Y. 130, 132; see, also, Debevoise v. New York, L. E. & W. R. R. Co., 98 N. Y. 377, 379; McDonald v. Mallory, 77 N. Y. 546, 550, supra.)
Nor does section 116 of the Decedent Estate Law, upon which the plaintiff relies, give him a right to sue in contract for his intestate’s allegedly wrongful death. That statute, simply declaring that “ actions upon contract, may be maintained by and against executors, in all cases in which the same might have been maintained, by or against their respective testators ’ ’, creates no new rights or liabilities. Since, as is apparent, plain *46 tiff’s intestate could not have maintained the cause of action alleged in the second count, there was no right of action to survive his death.
In sum, then, limiting consideration to the only matter before us, it is my conclusion that no action ex contractu is available to the plaintiff under either the common law of New York or its wrongful death statute and that, therefore, the Appellate Division properly granted the defendant’s motion to dismiss the second cause of action.

. In the Greco case (277 N. Y. 26, supra), this court unequivocally approved the Deodt case, stating significantly (p. 34): “ Nor is an action any the less on contract because the elements of damage arise out of a trespass (Sullivan v. Dunham, 161 N. Y. 290), or an assault (Busch v. Interborough R. T. Co., supra) or other personal injury (Doedt v. Wiswall, 15 How. Pr. 128; affd., 15 How. Pr. 145; Gillespie v. Brooklyn Heights R. R. Co., 178 N. Y. 347). Violation of a duty owing to another is a wrongful act; breach of a contract involving violation of duty may he likewise a wrongful act.”