party in interest. It will be observed that the court is very guarded in limiting cases where one interested in the result may act. It confines it to those cases where he has exclusive jurisdiction, and even then limits it, in addition, to those cases where the result need not necessarily affect him to his pecuniary loss or gain, and, still further, that his interest must be only minute; and, when all these conditions are complied with, he can only act so far in the matter as to prevent a failure of justice. These restrictions and limitations seem to me to make this case an authority for the reverse of the proposition contended for in the Burby Case.

In the case now under consideration, the body charged with the duty of investigating the complaint against the relator was composed of 13 members. It was not necessary that they should all act. The statute provides, as we have seen (Laws 1892, c. 677, § 19), that where three or more public officers are given power or authority, or are charged with a duty, to be performed or exercised by them as a board, a majority of them may exercise such power or perform such duty. So the doctrine of necessity, which has been applied to a sole judicial tribunal, has no application to the case under consideration. There was no necessity for Thurber to act in order to have the charges brought by him against the relator acted upon.

For the reason, then, that the accuser was permitted to sit in judgment upon the charges preferred by him, and that the relator was convicted by the vote of his prosecutor, I think that he has been deprived of one of the rights and privileges guarantied to him by the laws of the land, and that the proceedings of the defendants in trying the relator and removing him from office were illegal, and should be vacated and set aside. And it is therefore ordered that the proceedings of the defendants, the board of trustees of the village of Saratoga Springs, on the 9th day of August, 1895, adjudging the relator, Charles L. Pond, guilty of official misconduct, and removing him from the office of street commissioner of the village of Saratoga Springs, be, and the same hereby are, vacated and set aside, with $50 costs and disbursements.

The same question is presented in the case of People ex rel. Fay v. Board of Trustees of Saratoga Springs, argued at the same time with the one herein discussed, and a like order should be entered in that case.

PARKER, P. J., concurs. LANDON, J., concurs in result. MERWIN, J., dissents. PUTNAM, J., not acting.

---

(6 App. Div. 42.)

MEDINGER v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. June 2, 1896.)

1. DEATH BY WRONGFUL ACT—DAMAGES—CONSTITUTIONAL PROVISION.
    Const. 1895, art. 1, § 18, which provides that "the right of action now existing to recover damages for injuries resulting in death shall never be

abrogated, and the amount recoverable shall not be subject to any statutory limitation," does not authorize the recovery of any except actual damages sustained in excess of the limit which theretofore prevailed.

2. SAME—EXCESSIVE DAMAGES.

A verdict for $7,500, for the death of a woman 63 years old, who did the general housework for her family, consisting of her husband, 63 years old, and three grown sons, is excessive. Brown, P. J., and Bartlett, J., dissenting.

Appeal from city court of Brooklyn, trial term.

Action by Eugene F. Medinger, as administrator of Mary Medinger, deceased, against the Brooklyn Heights Railroad Company, to recover damages for the death of plaintiff's intestate, who was killed by defendant's electric car. From a judgment entered on a verdict for $7,500 in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed on condition.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

Morris & Whitehouse, for appellant.
Charles J. Patterson, for respondent.

HATCH, J.   The verdict of the jury settled the question of the right of plaintiff to recover, and we find no error in the record in this respect which calls for our interference. The amount of the verdict presents the only question upon which we have any difference of opinion.   The injury which furnishes the basis of the action produced the death of plaintiff's intestate.   Prior to the adoption of the constitution of 1894 the recovery in this action would have been limited in amount to the sum of $5,000, as that was the limitation of recovery in this class of actions then prescribed by law.   Code Civ. Proc. 1894, § 1904.   The constitution now in force, by section 18, art. 1, provides:   "The right of action now existing to recover damages for injuries resulting in death, shall never be abrogated; and the amount recoverable shall not be subject to any statutory limitation."   It is suggested that it was the purpose and intent of the framers of this constitution to permit a recovery, in all cases where death was produced by the negligent act of another, and deceased was without fault, beyond the statutory limitation that had theretofore prevailed, whenever the jury, in the exercise of their discretion, determined that the facts warranted it, and that this change in the fundamental law should be accepted by the courts as conclusive in the control of their action in the review of such determinations, and especially so when the court would have felt constrained to affirm a verdict for the full amount if the case had arisen under the statute in existence prior to the constitutional enactment referred to.   We are unwilling to adopt this construction of the constitution.   Beyond authorizing the recovery of actual damages sustained in excess of the limit which theretofore prevailed, we do not understand that the framers of the constitution have changed, or intended to change, the law previously existing, in any particular, or that they have furnished, or intended to furnish, any new or different rule for the guidance of the court.   The Code of Civil Procedure,

prior to the present constitution, by section 1904, provided that the damages to be awarded should be such sum as the tribunal trying the question of fact "deems to be a fair and just compensation for the pecuniary injuries, resulting from the decedent's death, to the person or persons, for whose benefit the action is brought." By a long course of judicial decisions, uniform in character, this rule has become firmly imbedded in the law; and we believe it has been held, without exception, that the damages which the statute contemplates are exclusively pecuniary.    The present Code provision uses precisely the same language in this respect.    Section 1904.    Such is also the rule under Lord Campbell's act (2 Beven, Neg. 209 et seq.), from which our statute was derived.    The constitutional provision has not changed this rule in the slightest respect.    Its language is, "The right of action now existing   *   *   *   shall never be abrogated."    We shall be aided to a correct determination in the construction of this constitutional provision by an examination of the proceedings of the constitutional convention which led to its adoption.    From lack of a proper index, or slightest clue to any subject-matter, the debates of the constitutional convention are of little practical value.    Nothing can be found, except the whole be examined.    Patience, however, has enabled us to lay hold upon this debate, but at a great sacrifice of time.    There were two amendments relating to this subject introduced into the convention, resulting in a majority and minority report thereon from the committee having the matter in charge.    The majority report recommended that the amendment be not accepted, for the reason that it was purely a matter of legislative concern.    The minority report recommended its incorporation into the fundamental law.    The majority report was disagreed to, and the convention proceeded to consider it in committee of the whole.    The friction of debate gradually crystallized the views of the convention, until Mr. Marshall, voicing evidently the sentiment of the majority, said:

"I think it is pretty well settled that the opinion of this body is that limitations upon the amount of recovery, in cases which flow from injuries resulting in death, should cease.    It is also, it seems to me, the idea of everybody present, who has expressed himself upon this subject in favor of such limitation, that the right of action now existing shall be continued.    The fear is felt that perhaps the right of action might at some time be abrogated by the legislature.    To cover both of these ideas, I have framed a provision."

Then followed the exact phraseology of the present section of the constitution, except that the words "now existing" were transposed, and made to follow the word "action," instead of the word "death." Continuing, Mr. Marshall said:

"The right of action which now exists is well defined in the statute.    We all know what that is.    It has been the subject of adjudication in this state for the last forty years.    There is no doubt as to the meaning of this language, and therefore, by reference to the cause of action now existing, and declaring that the right of action shall further continue, it avoids any circumlocution which has been suggested by some of the amendments."    Record of Debates, Const. Con. vol. 2, p. 961.

It thus clearly appears that not only does the language of the constitution signify no change in this respect, but the language of its

framers, in specific terms, shows that no change was contemplated, but that the rule so firmly settled as to be known to all should continue, with the limitation removed, as we shall see, to meet the wants of a proper case.    Practically, the opponents to the change rested their opposition upon two grounds:    (1) That it was a matter solely for the legislature; (2) that its effect might be the ruin and impoverishment of small corporations, partnerships, and individuals.    Those favoring the measure replied to this view by the assertion that it was practically impossible to obtain favorable legislative action; that there was no force in the second ground of objection, for the reason that the amendment did not change the law, but still left with the courts the question whether the recovery should be sustained; that when the verdict rendered was not warranted by the evidence, or the damages were excessive, the courts might be trusted to apply the remedy so that injustice could not be worked.    The argument which evidently controlled the convention in its action consisted in the claim that the arbitrary limitation was absurd and unjust, in measuring the pecuniary value of all lives, to the next of kin, by the same arbitrary standard; that the life which was high in ability, which commanded and received a large income from trained faculties and exceptional talents, and from which the next of kin received the full measure of pecuniary benefit, was worth more than the life low in ability and capacity of earning power, even depraved in character, and of little pecuniary value to the next of kin.    And it was suggested that, upon trials under the limitation, little attention was given to the value of life in earning power, the history of the life and its merits little gone into, but that it was left, upon meager testimony in this regard, for the jury to say, between nothing and $5,000, what was its pecuniary value; that if the limitation was removed the actual value of earning power, benefit to the next of kin, and consequent damage, would find a field for proof.    It was also pertinently suggested that, if there was a cause of action and right of recovery, why place a limit upon it, when there was scarcely a limit to its value.    Record of Debates, Const. Con. vol. 2, pp. 581–595, 651, 652, 947–942.    It is evident from this debate, and the arguments used, that this amendment was adopted for the benefit of the next of kin of the bread winner,—persons who in fact sustained large pecuniary damage on account of the negligent act which removed the person, and deprived dependents thereon of their sustenance, and which was not measured or recompensed by the sum awarded under the limitation.    To such persons it is the evident purpose to authorize a recovery measured by the actual loss sustained, which is to be established by proof.    It was never the purpose to remove the limitation, and authorize a recovery of damages, in every case where death was a result, without regard to the measure of loss, except as it should be, practically, arbitrarily measured by a jury.    There is nothing in the present statute authorizing such construction, or in the constitution itself, as that leaves the law to be enforced as it has always been.    When this section of the constitution was finally adopted, such was the express language of many of the debates.    Mr. Countryman said:

"The courts, as in all other cases, have the right, and it is their duty, to set aside verdicts which are excessive in amount.  They are to be just, fair, honest verdicts, and if they are excessive the courts must exercise their jurisdiction in this case, as in all others."

And this was the burden of the final debate, in answer to the objection that small corporations and individuals might be ruined by a removal of the limitation.     Record Const. Con. vol. 5, pp. 2189–2195.     We feel warranted, therefore, in saying that no change whatever was made, or intended to be made, in the law, respecting the supervision of courts over the verdicts of juries in this class of cases.     On the contrary, we are impressed with the fact that it is now more essential than ever that verdicts awarding damages should be scrutinized with care, and corrected without hesitancy, where they do not rest upon substantial testimony for their support. We still further fortify ourselves in this view by a consideration of the decisions of courts in other states where a limitation upon the extent of recovery in these cases has never existed.     Railway Co. v. Bayfield, 37 Mich. 205; Rose v. Railroad Co., 39 Iowa, 246; Railway Co. v. Barker, 39 Ark. 491; Railroad Co. v. Zebe, 33 Pa. St. 318. In England the rule is the same (Franklin v. Railroad Co., 3 Hurl. & N. 211), and in Canada (Hutton v. Corporation of Windsor, 34 U. C. Q. B. 487).     These cases all proceed upon the theory that the test is the pecuniary loss, and where that appears to be excessive it is the province of the court to interfere.     It seems clear, therefore, that no change of the law was contemplated by the change in the constitutional provision; and courts are now, as before, called upon to exercise the power in a proper case.     As we have before observed, the necessity of scrutiny, instead of being diminished, has increased. It has been said, with some authority to sustain it, that the supreme court had practically abdicated its power of review of verdicts of juries in negligence actions.     From time to time we have been admonished as to our duty by the court of appeals,—sometimes with nervous vigor and plain language (Smith v. Insurance Co., 49 N. Y. 211–216), sometimes in a milder form (Houghkirk v. Canal Co., 92 N. Y. 219–225).     The only salutary way of now administering this statute—more now of a necessity than ever before, and especially where the basis of pecuniary loss is involved, obscure, and difficult of reconciliation with the verdict rendered—is not found in abdication of function by the court.     It must furnish the reason for revision, and they must apply the remedy where the verdict has not substantial basis of support, or is excessive in amount.     Lockwood v. Railroad Co., 98 N. Y. 523–527.     And it should be equally the court's duty to ratify the verdict of a jury, where the proof warrants it, without regard to its amount.     Such we conceive to have been the design and intent of the framers of the constitution, and in that spirit the law should be administered.

Applying these views to the verdict in this case, and the evidence upon which it is based, we think that it is excessive.     Deceased was 63 years old, in good health.     She did the general housework for the family.     This consisted of plaintiff, who is 65 years old, and five grown-up sons, three of whom lived at home.     Deceased was in re-

ceipt of no income. Her children had reached the estate of manhood, which lessened, in a marked degree, the necessity of maternal care. Her probable duration of life, according to the tables, would be about 8 years. What was the pecuniary loss to the next of kin? The value of the work which she did could not have exceeded, annually, upon any basis furnished by the record, $520, and this we think a liberal estimate. The value of those services could not increase, as her powers would naturally diminish. In McIntyre v. Railroad Co., 37 N. Y. 287, there was a recovery of $3,500. The woman was under 50 years of age, earning $1 a day. The supreme court reduced the recovery to $1,500. If that measure should be applied here, this verdict should be materially reduced. But we are mindful of changed conditions, to some extent, since that decision was rendered, and think we must view the case having regard to present conditions. But in no view of the evidence can we see that the damages could exceed the sum of $5,000. Perhaps it is sufficient to sustain it at that sum. We are quite conscious that the conclusion at which we have arrived is not an exact logical deduction. The ingenuity of the human mind has not yet been able to compass and formulate a rule by which an exact measurement of damages may be reached in these cases. But we are satisfied that the sum awarded by the jury in this case is far beyond the actual damage sustained, and, while we may not be able to justify the sum to which the recovery is reduced by the application of rules of logic, yet we feel quite confident in saying that we have approached far nearer to the justice of the case than the verdict accomplished.

The order should therefore be that the judgment and order appealed from be reversed, and a new trial ordered, with costs to abide the event, unless plaintiff consents to reduce the recovery to the sum of $5,000, together with a proportionate amount of the extra allowance; and, if he so consents, then the judgment will be affirmed, without costs to either party in this court.

PRATT and CULLEN, JJ., concur.

BROWN, P. J., and BARTLETT, J. (dissenting). In dissenting from Judge HATCH'S conclusions, we do not desire to be understood as disagreeing with his argument upon the main question. We agree with him that, in removing the limit heretofore imposed upon verdicts in actions for causing death, it was not intended to change the power of the court to supervise and reduce such verdicts. Cases of this character are to be treated precisely as an action for injuries to a living person would be treated. Our power is a supervisory one, and we must give due effect to the judgment of the jurors. The case is not to be treated on appeal as it would if we were called upon to fix the damages in the first instance. To justify interference with the verdict, it must appear that some rule of law has been violated, or else that it is so excessive as to indicate partiality, passion, or prejudice in the minds of the jurors. The verdict in this case is upon the border line. It probably is larger in amount than the judges of this court would have awarded, but it is not beyond

the fair inference to be drawn from the circumstances surrounding the deceased, and her relations to her next of kin, and it does not indicate prejudice on the part of the jurors. For these reasons, we think the judgment should be affirmed.