**H. Grady GORE, Jr., as Executor under the Last Will and Testament of Gordon Dean, deceased, Plaintiff,**

v.

**NORTHEAST AIRLINES, INC., Defendant.**

United States District Court
S. D. New York.
July 16, 1963.

Kramer, Marx, Greenlee & Backus and Speiser, Shumate, Geoghan & Law, New York City, for plaintiff; Stuart M. Speiser, New York City, of counsel.

Haight, Gardner, Poor & Havens, New York City, for defendant; William J. Junkerman, James B. McQuillan, New York City, of counsel.

McGOHEY, District Judge.

The plaintiff who, in this wrongful death action arising out of the crash of a Northeast plane at Nantucket, Massachusetts, is asking damages of $1,750,000, has moved to strike the affirmative defense that the Massachusetts Wrongful Death Statute, pursuant to which the

action is brought, limits the recoverable damages to $15,000.[1] The motion is denied.

■ The plaintiff is a citizen of Maryland and a resident of the District of Columbia.[2] The defendant is a Massachusetts corporation doing business in New York. Jurisdiction rests on this diversity of citizenship, and so this court must apply the law of New York; including its conflict of laws doctrine.[3] Decision turns on whether the New York rule announced in Kilberg v. Northeast Airlines, Inc.,[4] and applied by this court in Pearson v. Northeast Airlines, Inc.,[5] applies here.[6] Kilberg, Pearson and the instant case arose out of the same crash.

In both Kilberg and Pearson, the decedent was a New York domiciliary, as was also each decedent's sole beneficiary as to each of whom this was true not only at the time of the decedent's death but also when the suit was commenced and thereafter. Also each decedent purchased his ticket and boarded the plane in New York. The New York Court of Appeals, affirming the dismissal in Kilberg of a cause of action brought under a contract theory, held it would require the plaintiff to "sue on the Massachusetts [wrongful death] statute" but would not apply that statute's provision with respect to the amount recoverable in the action.[7] The court stated that if the cause of action based on the Massachusetts statute were amended to ask more than $15,000 it could "be enforced, if the proof so justifies, without regard to the $15,000 limit." [8] The court thus gave effect to New York's "strong policy with respect to *limitations* in wrongful death actions." [9] That policy became part of New York's fundamental law following the Constitutional Convention of 1894 which proposed an amendment, later adopted, providing that the "amount recoverable shall not be subject to any

---

1. Mass.Gen.Laws Ann. ch. 229, § 2 (1955). At the time of this crash, August 15, 1958, the amount recoverable in a suit brought under the statute was limited to a "sum of not less than two thousand nor more than fifteen thousand dollars, to be assessed with reference to the degree of culpability of the defendant or of his or its servants or agents * * *." The statute has since been amended to raise the upper limit of recovery to $30,000. Mass.Gen.Laws Ann. ch. 229, § 2 (Supp.1962).

2. The decedent's will in which the plaintiff was named executor was admitted to probate by the Surrogate of New York County. The plaintiff has duly qualified.

3. Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477.

4. 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E. 2d 526.

5. D.C., 199 F.Supp. 539, aff'd en banc, 2 Cir., 309 F.2d 553, reversing 2 Cir., 307 F.2d 131, cert. denied, 372 U.S. 912, 83 S.Ct. 726, 9 L.Ed.2d 720.

6. The plaintiff's contention that this question has already been decided by a New York court having jurisdiction over the parties and is *res judicata* is without merit. In 1960 the defendant offered to compromise this suit for $15,000, the

maximum allowable under the Massachusetts statute. In February 1961, immediately after the Kilberg decision, the plaintiff executor petitioned the Surrogate of New York County for authorization to reject the offered compromise as "not * * * advantageous to and not in the best interests of the parties beneficially interested in the recovery" because of the Kilberg decision. Northeast Airlines was cited to show cause why a decree should not be entered but did not appear. The Surrogate entered a decree disapproving the proposed settlement. It is obvious from the petition, the decree and the nature of the proceedings that the Surrogate did not make or purport to make a final determination as to the law which would govern the wrongful death action pending in another court.

7. 9 N.Y.2d at 40, 211 N.Y.S.2d at 136, 172 N.E.2d at 528.

8. 9 N.Y.2d at 42, 211 N.Y.S.2d at 138, 172 N.E.2d at 529–530. The complaint, however, was not so amended. Instead, the action was settled for less than $15,000. See Pearson v. Northeast Airlines, Inc., 2 Cir., 307 F.2d 131, 132 n. 3; Currie, Conflict, Crisis and Confusion in New York, 1963 Duke L.J. 1, 7 n. 21.

9. Davenport v. Webb, 11 N.Y.2d 392, 395, 230 N.Y.S.2d 17, 20; 183 N.E.2d 902, 904. (emphasis in original.)

statutory limitation." [10] "It is evident from [the debates of the convention], and the arguments used, that this amendment was adopted for the benefit of the next of kin of the bread winner,—persons who in fact sustained large pecuniary damage on account of the negligent act which removed the person, and deprived dependents thereon of their sustenance, and which was not measured or recompensed by the sum awarded under the limitation." [11]

In Pearson, the Second Circuit Court of Appeals, sustaining the constitutionality of the Kilberg rule, noted that, "New York has a well recognized interest in the nature and amount of recovery obtained by dependents of the decedent in a situation such as this, regardless of the place of injury, because the dependents are its own domiciliaries. Wrongful death statutes have their primary justification in state recognition of the wrong inflicted upon the wife and children who remain behind after the death of the breadwinner; and its concern for their future welfare." [12]

The instant suit was not instituted until August 11, 1960, two years after the decedent's death. It was commenced by the service of a summons in the New York Supreme Court but the complaint was not served until October 31, 1961, more than three years after the death and ten months after the Kilberg decision. The suit was then removed to this court.[13]

█ The case is similar to Kilberg and Pearson to the extent that New York was the domicile of the decedent and the place where he purchased his ticket and boarded the plane. It is quite dissimilar with respect to the status of the beneficiaries. Gordon Dean, the decedent here, left surviving a widow and two infant children who had resided with him in New York, a then-adult daughter and a son, aged 19. The latter were both born of a prior marriage and both then resided in California as they still do. In September 1958, one month after the accident, the widow and two infant children moved from New York to Maryland where they have been domiciled ever since.

No New York court seems to have had occasion to consider what law should govern the issue of damages in a suit which, like this, is brought (1) under the limited damage death statute of a foreign state; (2) for a death which occurred when a plane operated by a corporation of that state crashed within its borders while on a flight which began in New York where the decedent, who was domiciled there, purchased his ticket and boarded the plane; (3) on behalf of five beneficiaries none of whom is a New York domiciliary or was when the suit was commenced; two of them being domiciled since before the death in a second foreign state; and three being domiciled in a third foreign state to which, one month after the death, they moved from New York where they had lived with the decedent.

It is true that, in Kilberg, the New York Court of Appeals expressed a concern for "the traveling citizen of this State." [14] It is also true that in the recent case of Babcock v. Jackson,[15] in an explication of the Kilberg rationale, the court, after quoting in full the passage in which the foregoing phrase appears, referred to "the competing interest of New York in providing its residents *or users of transportation facilities there originating* with full compensation for wrongful death." (emphasis added) It does not follow, however, that in adopting the Kilberg rule, the New York Court

10. N.Y.Const., art. 1, § 16.

11. Medinger v. Brooklyn Heights R.R., 6 App.Div. 42, 46, 39 N.Y.S. 613, 616.

12. 307 F.2d at 144 (dissenting opinion), adopted by the Court en banc, 309 F.2d at 556.

13. Prosecution of the suit was held in abeyance pending final disposition of the Pearson appeal.

14. 9 N.Y.2d at 39, 211 N.Y.S.2d at 135, 172 N.E.2d at 527.

15. 12 N.Y.2d 473, 479–480, 240 N.Y.S.2d 743, 748, 191 N.E.2d 279, 282.

of Appeals was concerned only or even primarily with the deceased traveling citizen of New York; or with the deceased who was a mere "user" of a locally originating transportation facility, without regard to the domicile of their respective dependents. On the contrary, it is clear from its reference to the history of the development of the State's strong public policy on the subject that the court's concern was to serve those who are, practically, the only appropriate ob-, jects of that policy, namely, the deceased's surviving dependents who are domiciled in New York;—the "persons for whose benefit the [wrongful death] action is brought." [16] In Riley v. Capital Airlines, Inc.,[17] the Appellate Division held legally insufficient an affirmative defense based on a limitation on recovery contained in the West Virginia wrongful death statute. While the opinion of the Appellate Division states only that the decedent was a New York resident, it appears from the opinion at Special Term that the administratrix "and her children" also were domiciled in New York.[18] Bopp v. Bell [19] appears to be the only other reported decision involving application of the Kilberg rule. The Appellate Division there affirmed without opinion an order striking an affirmative defense pleading the Massachusetts limitation. The suit arose out of an automobile collision in Massachusetts resulting in the death of a New York resident. It appears from the briefs and papers on appeal that the decedent left as dependents three infant children who were domiciled in New York at the time of the accident and at the time of suit.

It can hardly be argued that New York has a legally recognizable interest in the decedent's adult California domiciled children, sufficient to justify New York's courts in refusing to apply the damage limitation in the Massachusetts statute. There is certainly no evidence of a New York public policy to secure full compensation for foreign domiciled adults because they are the children of a New York domiciliary who, after they had established their foreign domicile, was killed in an accident in a foreign state which by statute limits the amount of damages recoverable in an action based on his death there. Indeed New York would appear to have a basis for disregarding the damage limitation with respect to the decedent's California children only if it were assumed that, if California had asserted an interest in securing full indemnity for its domiciliaries deprived of their expectation of future support by an injury outside the State, New York would honor that interest.[20] However, despite the early impetus which, in Grant v. McAuliffe,[21] California gave to the "contacts" approach to choice of law problems in tort cases, there has been no indication that, at this time, its courts would do other than apply the law as to damages of the site of the injury in a suit arising under a wrongful death statute.[22] Furthermore, the California Supreme Court in post-Grant cases, like the New York Court of Appeals in the post-Kilberg case of Davenport v. Webb,[23] has shown restraint in defining and asserting its domestic interests.[24] Thus to this court, it seems altogether unlikely that California would assert an interest adverse to that of Massachusetts in a case such as this, in which the California domicile of two merely possible and apparently emancipated beneficiaries is that State's sole connection with the transaction.

It remains to be considered whether the fact that Mrs. Dean and her two in-

---

16. N.Y.Decedent Est.Law, § 132.

17. 13 A.D.2d 889, 215 N.Y.S.2d 295.

18. 24 Misc.2d 457, 461, 199 N.Y.S.2d 515, 521.

19. 18 A.D.2d 914.

20. See Currie, supra n. 8 at 32–33.

21. 41 Cal.2d 859, 264 P.2d 944, 42 A.L.R. 2d 1162.

22. Cf. Gordon v. Reynolds, 187 Cal.App. 2d 472, 10 Cal.Rptr. 73.

23. 11 N.Y.2d 392, 230 N.Y.S.2d 17, 183 N.E.2d 902.

24. See Bernkrant v. Fowler, 55 Cal.2d 588, 12 Cal.Rptr. 266, 360 P.2d 906.

fant children were domiciled here at the time of Gordon Dean's death and for one month thereafter, would impel the New York Courts to consider them within the ambit of this State's strong protective public policy. Although those courts might consider that New York had some interest in the matter since, in addition to other contacts, the decedent was a "user[s] of transportation facilities * * originating [in New York]," [25] it seems more likely they would conclude that the "jurisdiction which has the *strongest* interest" [26] in Mrs. Dean and her children is Maryland, the state which now is and for the last five years has been their freely chosen domicile. However, if this suit had been brought in Maryland the court there would have been required by statute to apply the Massachusetts statute "as though such foreign law were the law of [Maryland]." [27] Accordingly and in view of the restraint in applying New York's own policies demonstrated by the court in Davenport v. Webb,[28] I think the plaintiff's choice of a New York court for the institution of this suit would be considered by that court to be a relatively "fortuitous" circumstance; [29] and that it would not subordinate the interests of Massachusetts [30] in order to afford the widow and children of this decedent better treatment than they would receive from the courts of their own state which was freely chosen as their domicile long before this suit was commenced.[31]

The motion is denied.

So ordered.

25. See Babcock v. Jackson, supra, 12 N. Y.2d at 480, 240 N.Y.S.2d at 748, 191 N. E.2d at 282; but see Currie, supra note 8, at 16.

26. Babcock v. Jackson, supra, 12 N.Y.2d at 484, 240 N.Y.S.2d at 752, 191 N.E.2d at 285. (emphasis added.)

27. Md.Ann.Code, art. 67, § 2 (1957).

28. 11 N.Y.2d 392, 230 N.Y.S.2d 17, 183 N.E.2d 902.

29. In her petition for appointment as guardian of her infant children, Mrs. Dean stated to the Maryland court in August 1959 that the appointment was sought primarily so that suit might be instituted, and that "upon the advice of her counsel, the Petitioner will initiate said action in the Province of Quebec, Canada." The plaintiff executor was and is a resident of Washington, D. C. The ultimate choice of New York as the forum was doubtless due in large part to a desire on the part of counsel to have the suit tried in the same place as most of the other lawsuits arising out of the Nantucket crash. Twenty lawsuits arising out of the crash were originally instituted in, or removed or transferred to, this court, including 13 wrongful death cases involving 11 decedents. Of the 11 decedents, all but Trauth had been residents of New York.

30. Massachusetts' interest does not derive solely from the fact that the plane crashed there. The defendant is a Massachusetts corporation, presumably an intended beneficiary of the Massachusetts policy of limited liability. Further, the site of the crash was not quite so "fortuitous" as in the multi-state journey hypothesized by Judge Desmond in Kilberg, 9 N.Y.2d at 39, 211 N.Y.S.2d at 135, 172 N.E.2d at 527. Nantucket was the decedent's intended destination. He was traveling to his summer home there.

31. Compare Trauth v. Northeast Airlines, Civ. 149–256, S.D.N.Y., a companion case to Pearson involving a New Jersey decedent and surviving dependents all of whom were domiciled in that State. This court denied a motion for leave to amend the Trauth complaint so as to ask more than $15,000 in damages, on the ground that the New York Court of Appeals in Kilberg had expressed a policy concern for New York residents; and that it did not appear that New York would treat New Jersey residents more favorably than New Jersey itself, which, the court found, would apply the Massachusetts limitation. See the comments on the Trauth ruling in Currie, supra note 8, at 30–32; 10 U.C.L.A.L.Rev. 678 n. 58.