H. Grady GORE, Jr., as Executor under the Last Will and Testament of Gordon Dean, Deceased, Plaintiff-Appellant,

v.

NORTHEAST AIRLINES, INC., Defendant-Appellee.

No. 324, Docket 30238.

United States Court of Appeals Second Circuit.

Argued April 11, 1966.

Decided Feb. 23, 1967.

---

2. The reason for this omission is not manifest.

Stuart M. Speiser, Kramer, Marx,
Greenlee & Backus, Speiser, Shumate,

Geoghan & Krause, Alfred W. Gans, John J. Hayes, John J. Tommaney, Norwood P. Beveridge, Jr., New York City, for plaintiff-appellant.

William J. Junkerman, Haight, Gardner, Poor & Havens, Douglas B. Bowring, John H. Riggs, Jr., New York City, for defendant-appellee.

Before LUMBARD, Chief Judge, and WATERMAN and ANDERSON, Circuit Judges.

WATERMAN, Circuit Judge.

This action arises out of the same Northeast Airlines summer weekend flight from New York City to Nantucket Island, Massachusetts, with which this court became acquainted in the actions for wrongful death entitled Kilberg v. Northeast Airlines, Inc., 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526 (1961), decided by the Court of Appeals of New York, and Pearson v. Northeast Airlines, Inc., 309 F.2d 553, 92 A.L.R.2d 1162 (2 Cir. 1962), cert. denied, 372 U.S. 912, 83 S.Ct. 726, 9 L.Ed.2d 720 (1963), decided after the Kilberg decision by this court sitting *in banc*.

Gordon Dean, plaintiff's decedent, was a prominent business executive who worked in New York City and resided there with his immediate family which consisted of his wife and their two small children, aged 4 and 2 respectively. On August 14, 1958, in New York City, he purchased a round trip ticket between New York City and Nantucket Island, Massachusetts, on Northeast Airlines. The following day, Friday, August 15, 1958, he used the ticket, boarding the plane as a fare-paying passenger at LaGuardia Airport in New York City to fly to Nantucket to join his family who were enjoying a summer vacational sojourn there. The flight was a direct one with no intermediate stops between LaGuardia and Nantucket airports; it

passed over no states other than New York and Massachusetts. As the plane attempted to land at Nantucket airport that day it crashed, a crash which plaintiff alleges was due to the negligence of Northeast Airlines, and Dean was killed.

On August 28, 1958, plaintiff, a nonresident of New York, a brother of Dean's widow, presented for probate to the Surrogate's Court of the County of New York Dean's will, in which plaintiff was the named executor. In due course the will was admitted to probate and plaintiff was qualified to act as executor. He has remained a non-resident of New York.

One month after the crash Mrs. Dean gave up the New York apartment where she and her two children had lived with Mr. Dean and went to Maryland to live with her mother at the mother's home. They were living there when the present suit was commenced [1] and when the judgment order below was entered.[2] Mr. Dean was also survived by two older children born of a previous marriage, who were residing in California at the time of Dean's death, and, it would seem, have continued to reside there. On August 15, 1958 the older, a married daughter, Martha Dean Contrarius, was in her 26th year, and the younger, a son, Franklin, in his 20th.

Northeast Airlines, Inc., is a Massachusetts corporation authorized to do business in New York. It maintains its principal place of business in Massachusetts, but has ticket offices and terminal facilities in New York, has daily flights initiating and terminating at New York airports, and advertises its New York contacts extensively. It was and is the only regularly scheduled airline serving Nantucket Island.

This action was instituted by plaintiff-executor in the New York State Supreme Court for New York County. The complaint set forth three causes of action

1. Summons was served on August 11, 1960 but plaintiff's complaint was not served until October 31, 1961. Progress was apparently delayed until after the Kilberg decision was handed down; and thereafter, after removal to the federal court, progress was further delayed until the final disposition of the *Pearson* case.

2. November 16, 1965.

for which damages were sought, one for occasioning the death of Mr. Dean, another for the pain and suffering caused by the accident which he endured before his death, and one for damage to his personal property. On Northeast's petition setting forth the diversity of citizenship of the parties the action was removed to the United States District Court for the Southern District of New York. Northeast then served its answer denying any liability, and additionally setting forth an affirmative defense to the first cause of action based on the $15,000 limitation of liability in the Massachusetts wrongful death statute, Mass.Gen.Laws ch. 229 § 2 (1955).[3] Plaintiff's motion under Fed.R.Civ.P. 12(f) to strike the defense as insufficient in law was denied. Gore v. Northeast Airlines, Inc., 222 F.Supp. 50 (S.D.N.Y.1963). Northeast, claiming that on the pleadings there was no genuine issue as to any material fact and that upon these material facts it was as a matter of law entitled to a defendant's judgment, then moved pursuant to Rule 56(b), Fed.R.Civ.P. for summary judgment dismissing plaintiff's wrongful death action insofar as it sought damages in excess of $15,000, dismissing the second cause of action based on pain and suffering before death and dismissing the property damage action insofar as it sought damages in excess of $100, the tariff limitation thereon. Northeast also moved pursuant to Fed.R.Civ.P. 12(c) that judgment be entered against Northeast on the pleadings *in the plaintiff's favor* for $15,000 on the wrongful death cause of action and for $100 on the property damage cause of action. Both of Northeast's motions were granted in an unreported opinion, and a final judgment was entered thereon.[4] Plaintiff only appeals from so much of the judgment as limited plaintiff's damages in the wrongful death cause of action to $15,000 and from the judgment entered for plaintiff in that amount. The basic claim before us on review relates to whether the $15,000 limitation imposed on plaintiff's recoverable damages for the wrongful death of plaintiff's decedent should have been applied.

This court, only having jurisdiction over this removed action by reason of the diversity of citizenship of the parties, must apply the law which the New York courts, the forum from which the action was removed, would have applied in adjudicating the parties' rights and liabilities. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This includes the application of New York's conflict of laws rules. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Therefore, we must, by applying New York law, determine a result that it appears the New York courts would reach if the New York state courts rather than the federal courts in New York were to consider whether the Mas-

---

**3.** At the time of the Nantucket accident this section of the Massachusetts General Statutes read as follows:

"Damages for death by negligence of common carrier.

If the proprietor of a common carrier of passengers * * * causes the death of a passenger, he or it shall be liable in damages in the sum of not less than two thousand nor more than fifteen thousand dollars, to be assessed with reference to the degree of culpability of the defendant or of his or its servants or agents, and recovered and distributed as provided in section one, and to the use of the persons and in the proportions, therein specified."

The statute has since been amended to raise the upper limit of recovery to $20,000. Mass.Gen.Laws Ann.Ch. 229 § 2 (Supp.1961).

**4.** The unreported opinion of the trial judge and the judgment order contained the following language:

" * * * and pursuant to Federal Rule 56(d), the Court finds that an airplane owned and operated by the defendant crashed at Nantucket, Massachusetts on August 15, 1958; that the crash resulted from the failure of the defendant's employees to exercise due care in the operation of the airplane; that Gordon Dean was a passenger on the airplane when it crashed; [and] that he died in that crash * * *."

sachusetts statute limiting to $15,000 the damages recoverable from Northeast so limited the damages a New York appointed and qualified executor could recover in New York for the wrongful death in Massachusetts of a New York resident survived by a widow and minor children.

In Kilberg v. Northeast Airlines, Inc., 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E. 2d 526 (1961), the New York Court of Appeals in a well-considered and reasoned dictum ruled in a wrongful death action involving this same Nantucket crash that, though the right to sue for damages because of the death was based upon the Massachusetts wrongful death statute under the rule of *lex loci delictus,* the ceiling on damages recoverable under that same statute could not be applied by New York courts because of a strong New York public policy against such limitations. See footnote 6, infra. In another case arising out of the same crash, considered in depth by our court *in banc,* Pearson v. Northeast Airlines, Inc., 309 F.2d 553 (2 Cir. 1962), cert. denied, 372 U.S. 912, 83 S.Ct. 726, 9 L.Ed.2d 720 (1963), we followed the *Kilberg* reasoning and we further held that the action of the New York Court of Appeals in approving the grounding of the action upon the Massachusetts statutorily created right while at the same time refusing to apply the built-in statutory limitation upon recoverable damages did not violate the full faith and credit clause of the U. S. Constitution or the due process clause of the Fourteenth Amendment.

The court below was of the belief that our *Pearson* holding following *Kilberg,* need not be followed here, even though the three decedents Kilberg, Pearson, and Dean, were domiciled in New York and each had extensive contacts in New York with the defendant, for the court found there to be a difference in the whereabouts of Mrs. Dean and Dean's other beneficiaries at times subsequent to Dean's death from the whereabouts of the Kilberg and Pearson widows after the crash, and believed this difference required the different result. In the first opinion below it is stated, 222 F. Supp. 50, at 51 (SDNY 1963, McGohey, J.) that:

> Kilberg, Pearson and the instant case arose out of the same crash.

> In both Kilberg and Pearson, the decedent was a New York domiciliary, as was also each decedent's sole beneficiary as to each of whom this was true not only at the time of the decedent's death but also when the suit was commenced and thereafter. Also each decedent purchased his ticket and boarded the plane in New York.

And later, at 52, it is said of the present case:

> The case is similar to Kilberg and Pearson to the extent that New York was the domicile of the decedent and the place where he purchased his ticket and boarded the plane. It is quite dissimilar with respect to the status of the beneficiaries. Gordon Dean, the decedent here, left surviving a widow and two infant children who had resided with him in New York, a then-adult daughter and a son, aged 19. The latter were both born of a prior marriage and both then resided in California as they still do. In September 1958, one month after the accident, the widow and two infant children moved from New York to Maryland where they have been domiciled ever since.

The court below seized upon this post-accident factual difference and used it to avoid the *Kilberg* result. It found that inasmuch as Dean's widow had broken up her New York City home after her husband's death and she and her children had left the state of New York and had thereafter been domiciled elsewhere, New York no longer had a strong interest in protecting them from the "pecuniary injuries" they had sustained resulting from the death of the man who had

during his lifetime provided them their support.[5]

■■ We are not convinced that this factual difference prohibits the plaintiff from going forward in this action, and we reverse the judgment order below. The New York cases do not indicate that protection of surviving beneficiaries residing in New York is the sole reason, or even the principal reason of several likely reasons, supporting the New York policy that proscribes limitations in wrongful death actions upon sums recoverable in a suit by the decedent's personal representative for the benefit of a surviving spouse and next of kin. As causative of New York's policy New York courts have pointed out that the fear of large recoveries in wrongful death actions might influence common carriers to exercise more care in transporting their passengers than they would perhaps exercise if the possible recoveries in such actions were arbitrarily limited to sums that might have no relationship to the pecuniary value particular decedents may have had to their surviving next of kin. See Oldfield v. New York & Harlem R. R. Co., 14 N.Y. 310 (1856); cf. Western Union Tel. Co. v. Cochran, 277 App.Div. 625, 102 N.Y.S.2d 65 (3d Dept.), aff'd 302 N.Y. 545, 99 N. E.2d 882 (1951). In so justifying the state's policy one discovers that the domicile of the passenger on the plane is the important consideration supporting the policy and the domiciles of the passenger's beneficiaries are irrelevant except as separate domiciles at the time of death may affect the pecuniary value of the decedent to the survivor. It is our con-

---

5. The applicable sections of the New York statutes are §§ 130–134 of the Decedent Estate Law, McKinney's Consol.Laws, c. 13. The pertinent language follows:

§ 130. Action by executor or administrator for negligence or wrongful act or default causing death of decedent

The executor or administrator duly appointed in this state, or in any other state, territory or district of the United States, or in any foreign country, of a decedent who has left him or her surviving a husband, wife, or next of kin, may maintain an action to recover damages for a wrongful act, neglect or default, by which the decedent's death was caused, against a natural person who, or a corporation which, would have been liable to an action in favor of the decedent by reason thereof if death had not ensued. Such an action must be commenced within two years after the decedent's death. * * *

§ 132. Amount of recovery

The damages awarded to the plaintiff may be such a sum as the jury upon a writ of inquiry, or upon a trial, or, where issues of fact are tried without a jury, the court or the referee, deems to be a fair and just compensation for the pecuniary injuries, resulting from the decedent's death, to the person or persons, for whose benefit the action is brought. * * *

§ 133. Distribution of damages recovered

The damages recovered in an action, as prescribed in this article, or obtained through settlement without action, are exclusively for the benefit of the decedent's husband or wife, and next of kin, except as hereinafter otherwise provided; and, when they are collected, they must be distributed by the plaintiff, or representative, to any or all of such husband or wife and next of kin, in proportion to the pecuniary injuries suffered, the proportions to be determined upon notice to all interested persons in such manner as the court shall deem proper and after a hearing at such time as the court may direct, upon application made by the plaintiff or representative or by the husband or wife or any next of kin. * * *

§ 134. Next of kin defined

The term "next of kin," as used in the last three sections of this article includes all those entitled under the provisions of law relating to the distribution of personal property, to share in the unbequeathed assets of a decedent, after payment of debts and expenses, other than a surviving husband or wife, * * *.

Dean's "next of kin" are his four children.

These sections were reenacted in 1966, effective September 1, 1967, and the language somewhat clarified, and after September 1, 1967 will be found as Sections 5–4.1 through 5–4.4 of the Estates, Powers and Trusts Law of New York, McKinney's Consol.Laws, c. 17–B, L.1966, c. 952.

clusion that Mrs. Dean's present residence does not set her apart from other widows who were domiciled with their deceased New York domiciled husbands when the husbands were tortiously killed. The reasons behind New York's policy proscribing statutory limitations upon recoverable damages in wrongful death actions appear to be based upon the state's interest in preserving a citizen's life as well as upon its interest in the well-being of a citizen's widow and other survivors. In the case before us, as was true in *Kilberg,* supra, and in *Pearson,* supra, the widow was a New York domiciliary at the time of her decedent's death, and as New York considers the rights of beneficiaries in wrongful death actions to be property rights which vest as of the date of death, Meekin v. Brooklyn Heights R. R., 164 N.Y. 145, 149, 58 N.E. 50, 51 L.R.A. 235 (1900), it is clear that the time of death is the crucial time in the determination of a survivor's interest in a wrongful death action. Even if this were not the New York rule it would be the desirable rule for it prevents beneficiaries from forum-shopping by changing domiciles after the decedent's death prior to commencing a wrongful death action. We hold that the date of death rather than the date of the commencement of an action for damages caused by the death is the determinative date as to the beneficiaries' domiciles for the purpose of choosing the applicable state law in a wrongful death action. Thus, unless the New York courts have subsequently modified the *Kilberg* rule, the relevant domicile of the survivors in the Dean household is not distinguishable from that of the widow in *Kilberg,*

and we are bound by *Kilberg's* dictate that the Massachusetts statutory limitation cannot be applied in the New York courts due to New York's strong public policy against such limitations.[6]

Several recent decisions of the New York Court of Appeals have created doubts as to the continued validity of the *Kilberg* doctrine in New York despite citations approving its vitality in the opinions in these cases. See Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 95 A.L.R.2d 1 (1963); Dym v. Gordon, 16 N.Y.2d 120, 262 N.Y.S.2d 463, 209 N.E.2d 792 (1965); Long v. Pan American World Airways, Inc., 16 N.Y.2d 337, 266 N.Y.S.2d 513, 213 N.E.2d 796 (1965); cf. Macey v. Rozbicki, 18 N.Y.2d 289, 274 N.Y.S.2d 591, 221 N.E.2d 380 (1966).

In *Kilberg* the Court of Appeals recognized the traditional rule that the *lex loci delictus,* the law of the place of the occurrence that resulted in the death, applied, or at least it applied to the extent of having been the creator of the cause of action. Undoubtedly the court felt constrained so to reason because a tort action for the damages suffered by one's survivors that were occasioned by one's death at the hands of a tortfeasor was unknown to the common law of England and continues to be thought of as having no existence separate from a statutory enactment.

*Kilberg* was decided in 1961. Two years later came the landmark case of Babcock v. Jackson, supra, and, as has been pointed out by many, the rationale of Babcock is not entirely compatible with that of *Kilberg.* Judge Fuld, on

---

6. It is stated by Chief Judge Desmond in his opinion for the majority in *Kilberg*:

Since both Massachusetts (General Statutes, ch. 229, §§ 1, 2, as in effect in Sept., 1958) and New York (Decedent Estate Law, Consol.Laws, c. 13, § 130) authorize wrongful death suits against common carriers, the only controversy is as to amount of damages recoverable. New York's public policy prohibiting the imposition of limits on such damages is strong, clear and old. Since the Constitution of 1894, our basic law has been

(N.Y.Const., art. I, § 16; N.Y.Const. [1894], art. I, § 18) that "The right of action now existing to recover damages for injuries resulting in death, shall never be abrogated; and the amount recoverable shall not be subject to any statutory limitation." Each later revision of the State Constitution has included this same prohibition against limitations of death action damages. 9 N.Y. 2d at 39, 40, 211 N.Y.S.2d at 135, 136, 172 N.E.2d at 528.

December 30, 1965, speaking for a unanimous court, two years after Babcock, in Long v. Pan American World Airways, supra, a wrongful death case, at 16 N.Y. 2d 337 at 341, 266 N.Y.S.2d 513, at 515, 213 N.E.2d 796 at 797, explains that in Babcock, which was not a wrongful death case, " * * * the court there rejected the 'inexorable application of the law of the place of the tort' and adopted for tort cases with multi-state settings the flexible principle that the law to be applied to resolve a particular issue is 'the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern' with the matter in issue and 'the strongest interest' in its resolution (12 N.Y.2d, at pp. 481, 484, 240 N.Y.S.2d, at pp. 748, 751, 191 N.E.2d, at pp. 282, 285). This controlling principle was recently [July 9, 1965] reaffirmed in Dym v. Gordon, 16 N.Y.2d 120, 262 N.Y.S.2d 463, 209 N.E.2d 792."

Moreover, the unanimous court in *Long* specifically holds that the *Babcock* approach and principle are just as applicable to wrongful death actions as to actions for tortious injuries not resulting in death. "There was no suggestion in Babcock that its approach and principle were inapplicable to actions for wrongful death and, indeed, in a number of cases in which the question has been considered, the courts * * * have indicated that the law to be applied is the law not necessarily of the place where the fatal accident occurred but rather of the place having the most significant relationship with, and the greatest interest in, the issue presented. [Citing cases.] It would be highly incongruous and unreal to have the flexible principle of Babcock apply in a case where the victim of the tort is injured but not where he is killed." 16 N.Y.2d 337 at 343, 266 N.Y.S.2d 513 at 517, 213 N.E.2d 796 at 799.

In dealing with the *Long* facts the New York court chose whether the wrongful death statute of Pennsylvania or that of Maryland applied to the litigation against the New York defendant, but it appears certain that the criteria used to effect that choice would not have been different if New York had been one of the states involved in the multi-state choice and had possessed an interest in determining the method of recovery for a wrongful death and the extent of damages recoverable in a wrongful death action.

When the case before us is examined in the light of the *Babcock-Long* criteria we find that the New York procedures governing the nature and the amount of recovery for Dean's wrongful death are the most logical procedures to be applied to this case.

■ New York was the domicile of the decedent and that of his principal beneficiaries at the time of his death. New York has an interest in applying its law so as to deter negligence of common carriers toward its domiciliaries, see Oldfield v. N. Y. & Harlem R. R., 14 N. Y. 310 (1856); cf. Western Union Tel. Co. v. Cochran, 277 App.Div. 625, 102 N.Y.S.2d 65 (3d Dept.), aff'd, 302 N.Y. 545, 99 N.E.2d 882 (1951), to see that the decedent's surviving dependents domiciled there at the time of the occurrence are adequately cared for during the period when the decedent would have continued to support them, to preserve its jurisdiction over the devolution of its domiciliary's estate and to protect creditors of the decedent who would present claims against that estate, and even perhaps against the wrongful death action recoveries. See Long v. Pan American World Airways, Inc., supra; N.Y.Decedent Estate Law § 133. The contract of carriage was made in New York, the ticket was purchased from and accepted by the carrier there, and the decedent's planned weekend round-trip began and was to end there. Northeast solicits interstate passengers in New York and cannot be heard to complain if, as a result of its activities in New York, it is subject to New York law in the determination of the legal consequences that follow from its negligence toward New York-based interstate passengers. See

Long v. Pan American World Airways, Inc., supra.

■ Whatever interest Massachusetts might have in applying its restrictive wrongful death statute rests on but two contacts with that state. It is the state of incorporation of Northeast, the tortious carrier, and it was the place of the crash. While any state is likely to be solicitous of the rights and welfare of the corporations organized under its laws, the New York courts do not regard this contact of any particular significance in grouping the contacts where compensation for injury to or death of a person is the subject of the litigation, see Dym v. Gordon, supra; Long v. Pan American World Airways, Inc., supra; cf. Kilberg v. Northeast Airlines, Inc., supra. The fact that this very accident occurred in Massachusetts was regarded as "fortuitous" by the New York Court of Appeals in Kilberg v. Northeast Airlines, Inc., supra, even though, for all that appears, it may have been the state of Kilberg's planned final destination. In the present case it is even more obviously fortuitous; Dean had purchased a round-trip ticket and Massachusetts was an intermediate, not a final, destination. Thus Northeast advances no contacts with Massachusetts and no interest in the outcome of the litigation which the New York courts would regard as superior to the contacts had with New York or superior to the interest in the consequences flowing from Dean's death that New York possessed.

California's only interest in this case is based upon the fact that it was at the time of the crash and still is the domicile of two of the possible beneficiaries, Dean's older children by a former marriage. These beneficiaries, however, were apparently emancipated at the time of their father's death, and the pecuniary losses they might be expected to suffer occasioned by his death are minimal. See New York Decedent Estate Law §§ 132, 133. Under these circumstances New York would not recognize any California interest superior to its own.

Although as we have stated earlier, the rights of Dean's beneficiaries were fixed at the time of his death, and at that time Maryland had no interest whatever in or any contact with the occurrence or the beneficiaries, the court below examined into Maryland's connection with the case as of the date when the action was commenced and as of the date when judgment was entered.

Assuming, arguendo, that this examination by the trial court into Maryland's interest as to those dates is relevant, Maryland's connections with the case would be strongest after those of New York, though New York's would remain paramount. Mrs. Dean, who had resided in Maryland at her mother's home before the marriage to Mr. Dean, returned to that home shortly after his death and she has continued to reside there with her two minor children, the other two principal beneficiaries of this action. Northeast points out that Mrs. Dean, upon petition to the Circuit Court of Montgomery County, Maryland, was appointed by that court as the guardian of her two minor children so as to be prepared to litigate a wrongful death action against Northeast in Quebec. The existence of this guardianship proceeding is irrelevant here, however, as the plaintiff who has sued for the benefit of these minor children is not Mrs. Dean, but H. Grady Gore, Jr., the New York appointed and qualified executor under the will of Mr. Dean, and who is administering Dean's estate pursuant to authority granted by the surrogate's court in the county of Dean's domicile at the time of death. Mr. Gore is the proper plaintiff under the New York Decedent's Estate Law § 130 and represents the interests of all of Dean's beneficiaries. Thus Maryland's interest in having its law applied here would be based solely on the fact that it became the haven of three of the decedent's beneficiaries who moved there after the death of the husband and father. We doubt that the courts of New York would regard this interest as superior to that of New York State because, as we concluded earlier,

the New York courts regard domicile at the time the cause of action arose as controlling, not domicile at the time of the commencement of the action or at any later date. It is unlikely that, even if it were relevant for New York to balance its interests and contacts against those of Maryland, the New York courts would here consider those of Maryland superior to those of New York. But of course it is our holding that there are no interests or contacts to balance as between these two states, no beneficiary of Dean having been domiciled in Maryland at the time of the wrongful death.

■ On the basis of the foregoing discussion of the pertinent principles in this case, we are satisfied that the court below should have granted plaintiff's motion under Fed.R.Civ.P. 12(f) to strike Northeast's affirmative defense pleading that plaintiff's recovery was limited to $15,000.

■ That motion having been denied, 222 F.Supp. 50 (S.D.N.Y.1963), and the recoverable damages for Dean's death having become restricted to a maximum of $15,000, it was inevitable that the court would then grant Northeast's subsequent motion pursuant to Rule 56(b) to dismiss the wrongful death action insofar as damages in excess of $15,000 were sought. In the same pleading, Northeast, recognizing that when it was sure to prevail upon its Rule 56 motion the pleadings would be closed, also moved, pursuant to Rule 12(c) Fed.R.Civ.P. for judgment against itself on the pleadings. By moving for summary judgment Northeast had admitted all facts that had been well-pleaded by plaintiff; and, as it had set forth in its own affirmative answering pleadings and in its Rule 56 motion that it could be held liable for as large a sum as $15,000, it chose to move for judgment against itself for that $15,000 sum rather than to stand trial as to whether it was negligent, or, if negligent, whether its negligence was of such a degree of culpability as to permit of a judgment of the permissible maximum of $15,000. See footnote 3, supra.

Perhaps it was not to be expected that in ruling upon the Rule 56 motion for summary judgment the trial court should have availed itself of its permissible power under 56(d)[7] to "ascertain what material facts exist without substantial controversy" and, having done so, to make an order specifying what those facts were. See footnote 4, supra. On the other hand, movant could well have anticipated such action, for the experienced trial judge who ruled on the summary judgment motion had been assigned all the cases arising from the Nantucket airplane crash that had been pending in the Southern District of New York (including at least 13 wrongful death cases and 7 actions brought by survivors of the crash) and, to the knowledge of defendant and its counsel, had conducted extensive pre-trial proceedings.

■ Inasmuch as we hold that if the defendant were negligent in causing Dean's death, recovery here is to be had pursuant to New York law and procedure and not pursuant to the law of Massachusetts, we must decide in remanding the case for further action below, whether defendant, who successfully moved for summary judgment and for judgment against itself on the pleadings may on re-

---

7. Fed.R.Civ.P. 56(d) reads as follows:
(d) Case Not Fully Adjudicated on Motion. If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

mand defend against plaintiff's claims that defendant was negligent and that this negligence caused Dean's death.

We are of the belief that the trial court's findings that,

> The defendant's motion for partial summary judgment on the first claim is granted as prayed for and, pursuant to Federal Civil Rule 56(d), the court finds that an airplane owned and operated by the defendant crashed at Nantucket, Massachusetts on August 15, 1958; that the crash resulted from the failure of the defendant's employees to exercise due care in the operation of the airplane; that Gordon Dean was a passenger on the airplane when it crashed; and that he died in that crash

govern the parties upon remand. If the trial judge had found these facts while ruling against the defendant on the Rule 56 motion, and a trial had then been necessary, the facts found by the judge would have been established and the parties at that trial would have been governed accordingly.

There would appear to be no justification for a different rule when, upon appeal, the appellate court accepts the trial court's findings of fact, rules against the movant, and a trial thereafter becomes necessary.

Though we think that by adopting the 12(c) procedure after prevailing upon its summary judgment motion, the defendant fully acquiesced in the findings that it was negligent and that its negligence caused Dean's death, we recognize that it may well be that in the process of "interrogating counsel" prior to the filing of his order the trial judge may be aware of concessions as to negligence made for the purpose of expeditious disposition, and by our ruling here we do not intend to indicate that we are taking away from the trial court all its discretionary power in the premises if prompt motions to modify the November 16, 1965 judgment order are presented to it after the remand. Nevertheless, we do point out that no objection to these findings of fact was made in the trial court and no appeal or protective appeal therefrom was taken to our court.

Judgment for plaintiff for $15,000 is reversed, and the cause remanded for disposition below not inconsistent with this opinion.